*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

THOMAS REID DECARLO,

        *Defendant-Appellant.*

No. 04-5813

> 

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-20093—J. Daniel Breen, District Judge.

Submitted: June 8, 2005

Decided and Filed: January 17, 2006

Before: SILER and GIBBONS, Circuit Judges; LAWSON, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Linda Parson Khumalo, KHUMALO LAW FIRM, Memphis, Tennessee, for Appellant. Dan L. Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

DAVID M. LAWSON, District Judge. Defendant-appellant Thomas Reid DeCarlo appeals his conviction and sentence for two counts of traveling in interstate commerce with intent to engage in a sexual act with a minor female. DeCarlo was convicted by a jury of violating both 18 U.S.C. § 2241(c) – which prohibits interstate travel with the intent to have sex with a child younger than twelve years old – and 18 U.S.C. § 2423(b) – which prohibits interstate travel for the purpose of engaging in "illicit sexual conduct," defined as a sexual act with a person under eighteen years old that violates one of the sections of chapter 109A of Title 18, which includes section 2241(c). *See* 18 U.S.C. §2423(f). On appeal, DeCarlo contends that his arrest was unlawful because probable cause did not support the arrest warrant; conviction of both counts, which were based on the same conduct, violates the Double Jeopardy Clause; the district court erred in granting a four-level enhancement based on a victim under twelve years of age, *see* U.S.S.G. § 2A3.1(b)(2)(A); his

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

constitutional rights were violated because a jury did not determine that the victim was under twelve and he used a computer to facilitate the crime; and the district court erred in failing to grant downward departures based on illicit tactics employed by a law enforcement officer. We conclude that there was no defect in the arrest warrant, the Double Jeopardy Clause requires that we vacate the conviction on one of the counts, the Sentencing Guidelines range was properly calculated, and resentencing is required by *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

I.

The case arose from an investigation conducted by Special Deputy United States Marshal Dallas Dallosta working in conjunction with the Federal Bureau of Investigation's Crimes Against Children Task Force. In March 2003, Dallosta received a citizen's complaint concerning an Internet chat room hosted by Yahoo.com. The chat room ostensibly had been established for adolescent girls to converse with one another online, but when Dallosta visited the site, she discovered a link to a profile of a person identified as "daddywantsagirl_veryynggirl." That individual had listed under the interests section of the profile page a category entitled "Kinki Kids." Investigating further, Dallosta discovered that the individual included a disturbing remark in the "hobbies" category. She testified:

> . . . a lot of times people in the hobbies will list, like you know, soccer, basketball, boating, camping, that type of stuff. But on this one I saw it says, "Looking for a girl to come live me whose parents will send to me. I'm very serious about that. I play no games. I want to start a family, a special family. Not into abuse, he he."
>
> So when that said – you know, when there was a 36-year-old male looking for a girl whose parents would give her permission to come live with him, that's what alarmed me.

J.A. at 150.

Dallosta then created a fictitious name, Valerie Murphy, and a bogus screen identifier, InsaneBlondie76, and sent an email to daddywantsagirl_veryynggirl. According to Dallosta's testimony, the message read:

> "I'm writing you because I hope you are real. I've gotten a ten-year-old girl dumped on me. Don't get me wrong, she's a good kid, but I can't take care of her." . . . . "I would love to – . . . . . find a good home for her. Let me know, but only if you are a nice guy. Please help me out."

J.A. at 155.

Daddywantsagirl_veryynggirl turned out to be the defendant, Thomas DeCarlo, a resident of North Carolina. He responded with an instant message to "Murphy" that asked about the possibility of taking the child, provided his telephone number, and gave a second email address. According to Dallosta, DeCarlo also described the type of girl he was looking for and what he proposed to do:

> "So what are you wanting?" He said, "Well, I'm wanting a girl who can commit to me and who would love to start a family with me." I said, "What age?" He said "10-18." I said, "Okay, so that's good. How is she going to be treated?" He said, "Good." I said, "I'm a little nervous." And then "little" again. . . . He said, "Why?" I said, "I want her to be treated good, but I can't do it." He said "Well, I don't believe in hurting any girl. That is wrong." I said, "I'm glad to hear that." He said "Thanks." . . . . He said, "Anything you think I should know. What does she look

> like?" I said, "She is skinny, brownish blond hair, hazel eyes, kind of short for age."
> . . . . He said, "Sounds very beautiful." I said, "She's a cute kid." He said, "I bet." .
> . . . He said "Great. So would she want me to make love to her?" I said, "She don't
> care so long as she's not getting beat."

J.A. at 156-57. DeCarlo also told Dallosta that the girl, who Dallosta identified as "Samantha," would be going to Greensboro to live in a house that cost him $100,000 and that he might be willing to pay for Dallosta to bring Samantha to him.

To further the subterfuge, Dallosta expressed concern that DeCarlo might be an undercover police officer setting her up. Dallosta's character, Valerie Murphy, had been to jail and was unwilling to go back. DeCarlo responded "Hell, no" he was not "a cop," and offered to show Dallosta where Samantha would live using a web camera. J.A. at 159. He then sent a real-time video feed online to Dallosta. At DeCarlo's request, Dallosta emailed him a picture of Samantha. The picture was really that of Dallosta when she was ten years old.

Thereafter, Dallosta and DeCarlo determined that DeCarlo would drive to Memphis, Tennessee to pick up Samantha. DeCarlo asked how much a motel room would cost, and Dallosta explained that she thought a room would run him forty-five dollars. The two also talked of the dangers of the trip: the potential of running into police officers and that Murphy could end up in jail. DeCarlo promised that he would drive slowly to avoid police and give himself plenty of time to complete the trip. Dallosta further informed DeCarlo that it would "break Samantha's heart" if things went awry. DeCarlo promised the trip would go smoothly.

After Dallosta and DeCarlo made the initial arrangements, Dallosta testified that she placed a call to DeCarlo on March 11, 2003. During the conversation, Dallosta used a special phone meant to alter her voice so she could pretend she was Samantha. The call lasted three or four minutes, and DeCarlo indicated he knew who Samantha was. Thereafter, during an internet conversation, DeCarlo told Dallosta that he would leave for Memphis on March 12, 2003, around 4:00 a.m. DeCarlo estimated that he would arrive in Memphis at approximately 3:00 p.m. and would meet Dallosta and Samantha at a Super 8 Motel.

On March 12, 2003, Dallosta and an FBI agent, Stephen Lies, went to the Super 8 Motel where DeCarlo was to meet Dallosta. Dallosta observed DeCarlo checking into the motel. DeCarlo was arrested by the Shelby County sheriff's office and transported to the FBI office. There, DeCarlo provided agents with a verbal statement, which was later reduced to writing and signed by DeCarlo. The statement read:

> On March 10, 2003 "insaneblondie76" contacted me over the Internet through an
> offline message. . . . She said "hi" in the message. I looked at the profile and did not
> know who she was so I said "hi" back. We exchanged personal data and she asked
> if I had and any kids, and I said yes, one who had passed away. She told me that she
> had a girl named Samantha, eleven years old, who was staying with her. I thought
> it was her kid at first. She asked me about where I lived and if it was a nice place.
> I told her I live in North Carolina and she said she lived in Memphis. She asked if
> I was coming to Jackson, TN. I told her I was coming to the Memphis area because
> I was looking for a job. She said it was a long way. I told her I had a $100,000
> house and that jobs were scarce around here. I told her I was going to Memphis to
> the cheapest hotel I could find. She told me to try the Super 8 Motel on exit 23. I
> told her I was leaving shortly the next morning because I wanted to get there. She
> started talking about Samantha again and how she was abused and abandoned by her
> mom. I took it as a joke when she asked me if I wanted to have her as my daughter.
> I said "sure" but I was joking. I had two kids of my own. I talked to her yesterday

and she asked if I was still coming down and I said yes. She said she would like to meet me at the motel and put the room in her name. To hold it for me. That is how I discovered her name was Valerie Murphy. I came into Memphis this morning and checked into the motel. I never met Valerie Murphy in person.

J.A. at 39. DeCarlo also signed a consent form allowing agents to search his home, computer, and email accounts.

On March 13, 2003, Dallosta swore out a criminal complaint before United States Magistrate Judge James H. Allen. The complaint was signed on March 17, 2003 and an arrest warrant was issued.

A federal grand jury returned a two-count indictment on March 18, 2003 that charged DeCarlo with (1) traveling in interstate commerce with the intent to engage in a sexual act with a female child under the age of twelve in violation of 18 U.S.C. § 2241(c) (also referred to as "aggravated sexual abuse") and (2) traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a person under eighteen years old in violation of 18 U.S.C. § 2423(b). Thereafter, DeCarlo filed a motion to suppress the statements and physical evidence obtained following his arrest, asserting that his arrest lacked probable cause and his statements were involuntary. The district court denied DeCarlo's motion following an evidentiary hearing. DeCarlo subsequently filed a motion to dismiss one count of the indictment asserting the indictment was multiplicitous. The district court denied this motion in a written order dated August 25, 2003.

On November 12, 2003, DeCarlo was found guilty on both counts following a two-day jury trial. The district court held a sentencing hearing on June 29, 2004. The court sentenced DeCarlo to 293 months imprisonment on count one and 180 months imprisonment on count two to run concurrently. The district court also imposed a special assessment fee of $100 on each count. In determining DeCarlo's sentence, the district court applied a four-level enhancement pursuant to section 2A3.1(b)(2)(A) because the victim in this case was younger than twelve, and a two-level enhancement in accordance with section 2A.3.1(b)(6)(B) because a computer was used in committing the offense. The district court further denied DeCarlo's motions for downward departure based on coercion and duress, *see* U.S.S.G. § 5K2.12, the victim's conduct and role in the offense, *see* U.S.S.G. § 5K2.10, and mitigating circumstances. *See* U.S.S.G. § 5K2.0(b). The district court also overruled DeCarlo's objections to the computation of his criminal history category. DeCarlo filed a timely notice of appeal on July 7, 2004.

II.

This court reviews the district court's denial of a motion to suppress applying two standards: its factual findings are reviewed for clear error and its conclusions of law, *de novo*. *United States v. Moncivais*, 401 F.3d 751, 754 (6th Cir. 2005). The denial of a motion to dismiss presenting double jeopardy issues is reviewed *de novo*. *In re Ford*, 987 F.2d 334, 339 (6th Cir. 1992). This court reviews the district court's construction and interpretation of the sentencing guidelines *de novo*. *See United States v. Chriswell*, 401 F.3d 459, 463 (6th Cir. 2005). As for the sentence itself, because the defendant did not object to his sentence at his sentencing hearing on the ground that it was based on judge-found facts in contravention of *Blakely v. Washington*, 542 U.S. 296 (2004), or *Apprendi v. New Jersey*, 530 U.S. 466 (2000), we will review DeCarlo's sentence for plain error under Federal Rule of Criminal Procedure 52(b). *United States v. Johnson,* 403 F.3d 813, 815 (6th Cir. 2005).

A.

DeCarlo's motion to suppress was based on the arguments that he was arrested without probable cause, his consent to search his home and computer was invalid and the search was conducted without a warrant, and his statements were involuntary and taken in violation of his Fifth and Sixth Amendment rights.  The district court rejected these arguments, and DeCarlo advances only the probable cause argument on appeal, but he bases it on a theory never presented to the district court.  He now argues that the arrest warrant was issued in reliance on an affidavit that contained a false statement.

The affidavit in support of the arrest warrant contained the following statement: "DeCarlo agreed to pay Affiant $100.00 in return for the child."  DeCarlo points to Dallosta's trial testimony as evidence that the statement is not true.  Dallosta testified to a conversation with the defendant via instant messaging:

> Me, "One other thing."  Him, "Okay."  Me, "I hope you do not think I am a bad person, because I'm not, but."  Him, "You are not bad.  But what?"  Me. "Is there any way you could maybe bring me $100 so I can get home? I am in such a bad way."  Him, "I will try, I promise."  Me, "Okay.  Thank you so much. I feel really bad for asking, but I really need it, and I really think she will be worth all your trouble."  Him, "To feel bad, look what I might bring home, a beautiful, loving girl. She is worth going to hell and back for."

J.A. at 163.  DeCarlo contends that the falsity of the statement in the affidavit concerning the payment of $100 renders the warrant invalid because of the absence of probable cause.  We do not agree.

As a threshold matter, this assertion was never raised before the district court and consequently need not be addressed on appeal.  *See Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002) (observing that "[t]his court does not ordinarily address arguments raised for the first time on appeal").  That defect notwithstanding, the record does not reflect that this single, isolated comment, even if improper, affects the finding of probable cause.  Dallosta stated that she had several conversations with DeCarlo about his desire to come to Tennessee to pick up Samantha, have sex with Samantha, and start a family with Samantha.  The affidavit recites Dallosta's entire on-line encounter with DeCarlo and plainly establishes his intent to cross a state line for the purpose of obtaining a ten-year-old girl, spending time in a motel room with her, having sex with her, and returning with her to North Carolina.  Those facts establish a violation of 18 U.S.C. §§ 2241(c) and 2423(b) irrespective of any exchange of money.  Moreover, one plausible reading of the Internet exchange between DeCarlo and Dallosta about the money is that DeCarlo was willing to pay for Samantha: responding to Dallosta's statement that she felt bad asking for money and Samantha would "really . . . be worth all your trouble," DeCarlo declared, "She is worth going to hell and back for."

The court finds no merit in the defendant's argument that the arrest warrant was defective or that all the evidence obtained thereafter should have been suppressed.

B.

DeCarlo next argues that the district court erred when it denied his motion to dismiss count one of his indictment as multiplicitous.  According to DeCarlo, if one crime or act has been divided into more than one count, multiplicity occurs, resulting in multiple punishments for what amounts to a single illegal act.  *See Gerberding v. United States,* 471 F.2d 55, 58 (8th Cir. 1972).  Such an indictment, he says, violates the Double Jeopardy Clause of the Fifth Amendment. *See United States v. Dixon*, 509 U.S. 688, 696 (1993).  The proper remedy, DeCarlo asserts, is an election or

consolidation of the offending counts and dismissal of the surplus counts.  *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 224 (1952).  It appears that the district court agreed with this reasoning at the motion hearing but held that dismissal of one of the counts was unnecessary.  Instead, the district court stated that in the event DeCarlo was found guilty on both counts, he would be punished under only one statute, thereby avoiding any violation of his Fifth Amendment rights.  However, the district court imposed sentences on both counts of conviction (although the prison terms ran concurrently), including the statutory $100 special assessment on each count.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.   The prohibition against double jeopardy protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense.  *See Witte v. United States*, 515 U.S. 389, 391 (1995); *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997).  However, "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz v. United States*, 450 U.S. 333, 344 n.3 (1981).

The first step in deciding whether one act can give rise to more than one conviction under separate statutes, or separate sections of the same statute, is to determine "whether Congress intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980) (quoting *Jeffers v. United States*, 432 U.S. 137, 155 (1977)).  "To determine the congressional intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction." *Id.* at 536.

The first rule of statutory construction to which we turn is one summarized by the  Supreme Court in *Rutledge v. United States*, 517 U.S. 292, 297 (1996): "we presume that where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." *Id.* at 297 (citing *Ex parte Lange*, 18 Wall. 163, 168-170 (1874); *Whalen v. United States*, 445 U.S. 684, 691-92 (1980); *Ball v. United States*, 470 U.S. 856, 861 (1985)) (internal quotes omitted).  If Congress so intended, that intent must be clearly expressed.

The two statutes in question are set forth below.  The statute charged in count one of the indictment reads as follows:

> Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, or in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both. If the defendant has previously been convicted of another Federal offense under this subsection, or of a State offense that would have been an offense under either such provision had the offense occurred in a Federal prison, unless the death penalty is imposed, the defendant shall be sentenced to life in prison.

18 U.S.C. § 2241(c).  The term "sexual act" is defined later in that chapter in section 2246.

The statute charged in count two reads:

> Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(b). Section 2423 contains a definition section that includes a critical term used in subsection(b):

> As used in this section, the term "illicit sexual conduct" means (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

18 U.S.C. § 2423(f).

Section 2241(c) prohibits, among other things, traveling in interstate commerce with intent to commit a sex act with a person under age twelve. Section 2423(b) proscribes interstate travel "for the purpose of engaging in any illicit sexual conduct with another person." The term "illicit sexual conduct" is defined in section 2423(f) by making reference to Chapter 109A of that title; Chapter 109A includes section 2241(c). Congress, therefore, was obviously aware of the interplay between 18 U.S.C. § 2423(b) and § 2241(c). However, an examination of the statutory text does not reveal a congressional intent to multiply the punishments when a single act violates both statutes.

If congressional intent is not expressed or cannot be discerned by other methods of statutory construction, the court then must analyze the elements of the two crimes to determine if Congress intended multiple punishments for the same act. The test expressed by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932), remains the standard to determine whether the Double Jeopardy Clause prohibits multiple punishments. *United States v. Barrett*, 933 F.2d 355, 360 (6th Cir. 1991). The court

> focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction. . . . If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Id*. at 360-61 (internal citations and quotes omitted). The Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation if discrete elements must be proved in order to make out a violation of each statute. *See Dixon*, 509 U.S. 688.

The government argues that the two statutes at issue in this case are not identical: section 2241 requires proof that the victim is less than twelve years of age; section 2423 requires proof that the intended sexual act would have constituted a violation of Chapter 109A if it occurred in the special maritime and territorial jurisdiction of the United States; and the definition of sexual act when read together with section 2241 does not require a showing that the sexual act constitutes a criminal offense, in and of itself.

The government is correct that a person could violate section 2423(b) *theoretically* without also violating section 2241(c). It is evident from the statutory text that each section includes a variety of proscribed conduct. A person could violate these statutes in a number of different ways. However, the Supreme Court modified the application of the *Blockburger* test in *Whalen* and *Illinois v. Vitale*, 447 U.S. 410 (1980), when dealing with complex and overlapping statutes that define multiple ways that they may be violated and contain alternative elements. As this court explained in *Pandelli v. United States*,

[B]efore [the Court] applies the [*Blockburger*] test to a multi-purpose criminal statute, . . . it must construct from the alternative elements within the statute the particular formulation that applies to the case at hand.  It should rid the statute of alternative elements that do not apply.

*Pandelli*, 635 F.2d at 537.

Based on the government's theory of the case, to establish a violation of section 2241(c) as charged the government had to prove that (1) DeCarlo traveled in interstate commerce; (2) he intended to engage in a "sexual act"; and (3) the object of the sex act was less than twelve years old.  Similarly, under section 2423(b), the government had to show that (1) DeCarlo traveled in interstate commerce; and (2) he intended to engage in "illicit sexual conduct," meaning that (i) the victim was less than eighteen; and (ii) if DeCarlo completed his actions, a violation of Chapter 109A would have resulted if the action occurred in the special maritime or territorial jurisdiction of the United States.  The violation of Chapter 109A alleged in this case was an intended sex act with a person less than twelve years old in contravention of section 2241(c).  Considering the two statutes together, it appears that proof of section 2241(c) as charged in the indictment in *this* case would necessarily require conviction under section 2423(b).  Applying the *Blockburger* test as subsequently modified, we must conclude that the jury's verdict of guilt on both counts of the indictment constituted multiple convictions for the "same offense."

The two charges – interstate travel with intent to have sex with a person under twelve and interstate travel with intent to have illicit sex with a person under eighteen – did not render the indictment defective.  Under the circumstances of this case, one crime was a lesser offense included in the other: an intent to commit an illegal sex act with a person under eighteen includes the intent to commit that act with a victim under twelve.  The government could charge a lesser included offense.  *See Robertson v. Morgan*, 227 F.3d 589, 593-94 (6th Cir. 2000) (applying *Blockburger* to determine whether one statute is a lesser included offense of the other).  However, DeCarlo properly could not be convicted and punished under both statutes.

In allowing both convictions to stand, even when the two prison sentences were to run concurrently, the district court violated DeCarlo's Fifth Amendment rights.  In *Rutledge v. United States*, where the defendant was convicted of both conspiring to distribute cocaine as well as conducting a continuing criminal enterprise (CCE), the trial judge imposed concurrent sentences for both convictions.  However, the Supreme Court, after determining that the conspiracy charge was a lesser included offense of the CCE charge, held that one of the convictions and its concurrent sentence had to be vacated under the Double Jeopardy Clause.  517 U.S. at 301-03, 307.  The Court stated that not only did the imposition of a $50 special assessment on each conviction amount to a second punishment, but also concluded a second conviction holds the potential for "adverse collateral consequences" aside from the concurrent sentence, such as delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma.  *Id.* at 302 (quoting *Ball v. United States*, 470 U.S. at 864-65).  This court has echoed that reasoning in other cases as well.  *See, e.g., United States v. Avery*, 128 F.3d 966, 971-72 (6th Cir. 1997); *United States v. Elder*, 90 F.3d 1110, 1132 (6th Cir. 1996).

We conclude, therefore, that the Double Jeopardy Clause requires that DeCarlo's conviction of the lesser crime be vacated.  On remand, the district court is instructed to vacate the conviction on count two of the indictment alleging a violation of 18 U.S.C. § 2423(b).

### C.

Because there was no actual ten-year-old victim in this case, DeCarlo contends that the district court erred when it included a four-level enhancement in the offense level calculation under

the Sentencing Guidelines for a sex crime where "the victim had not attained the age of twelve years[.]"  U.S.S.G. § 2A3.1(b)(2)(A).

Conceptually, there are two distinct rationales for justifying the severity of punishments imposed by the national and state legislatures upon conduct deemed criminal: the gravity of the resulting harm, and the intent with which the act was done.  *See* LaFave, *Criminal Law* § 11.5 (2d ed. West 1999); *see also* Kadish, The Criminal Law and the Luck of the Draw, 84 *J. Crim. L. & Crimin.* 679 (1994); Katz, Why the Successful Assassin is More Wicked Than the Unsuccessful One, 88 *Cal. L. Rev.* 791 (2000); Moore, The Independent Moral Significance of Wrongdoing, 1994 *J. Contemp. Legal Issues* 237 (1994); Robinson, Some Doubts About Argument by Hypothetical, 88 *Cal. L. Rev.* 813 (2000).  In this case, Congress has conferred wide discretion on courts that are confronted with a violation of 18 U.S.C. § 2241(c): a person "shall be fined under this title, imprisoned for any term of years or life, or both."  The defendant's argument seems to suggest that in guiding that discretion, the Sentencing Commission has focused on the former rationale to the exclusion of the latter.  But we do not believe that is the case.

The Sentencing Commission was charged by Congress with the task of drafting sentencing guidelines that "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code."  28 U.S.C. § 991(b)(1)(A).  Those purposes include "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  The critical fact that renders the defendant's conduct criminal in this case is not the act or the resulting harm, but the intent with which the act was done.  Certainly it is no crime to travel between states, but to do so with the evil intent described in 18 U.S.C. § 2241(c) will subject a person to the punishment prescribed by Congress and refined by the Sentencing Commission.  The plain language of the statute makes the age of the intended victim an element of the crime, and it punishes attempts the same as completed acts.  The applicable Guidelines provision must be viewed in that context.

The Sentencing Guidelines provisions in effect at the time DeCarlo was sentenced provided the following formula for calculating his offense level:

(a) Base Offense Level: 27

(b) Specific Offense Characteristics

(1) If the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b), increase by 4 levels.
(2) (A) If the victim had not attained the age of twelve years, increase by 4 levels; or (B) if the victim had attained the age of twelve years but had not attained the age of sixteen years, increase by 2 levels.

U.S.S.G. § 2A3.1 (Nov. 1, 2002).  The specific Guidelines section and commentary in effect at the time of DeCarlo's sentence did not define the term "victim."  However, the commentary to that section stated: "Sexual offenses addressed in this section are crimes of violence.  Because of their dangerousness, attempts are treated the same as completed acts of criminal sexual abuse."  U.S.S.G. § 2A3.1, Comment. (backg'd) (Nov. 1, 2002).  This comment suggests that the Sentencing Commission was focusing on the actor's intent when it fashioned the offense level enhancements, not the resulting harm.  *See* 28 U.S.C. § 994(c)(3) (instructing the Sentencing Commission to consider "the nature and degree of the harm caused by the offense" in establishing offense levels "only to the extent that [it has] relevance").  Construing the term "victim" to include a virtual victim is consistent with that approach.  *See United States v. Lebovitz*, 401 F.3d 1263, 1268-70 (11th Cir. 2005) (holding that section 2A3.1(b)(2)(A) "applies whether the minor 'victim' is real, fictitious, or an undercover officer").  Moreover, the commentary to section 2A3.2 defined "victim" as either

"an individual who . . . has not attained the age of 16 years" or "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years." U.S.S.G. § 2A3.2, comment. (n.1). That language was added in November 2000 "to ensure that offenders who are apprehended in an undercover operation are appropriately punished." U.S.S.G. App. C, amend. 592.

On April 30, 2004, the commentary to section 3A2.1 was amended to state: "'Victim' includes an undercover law enforcement officer." U.S.S.G. § 2A3.1, comment. (n.1) (Nov. 1, 2004). DeCarlo argues that this amendment addressed an "obvious ambiguity," and he should be given the benefit of the doubt. It is true that a sentencing court must apply the version of the Sentencing Guidelines in effect at the time that the defendant is sentenced. *See* U.S.S.G. § 1B1.11(a). However, "if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." *Id*. § 1B1.11(b)(2); *see also United States v. Luster*, 889 F.2d 1523, 1529 (6th Cir. 1989) (instructing that "[i]nasmuch as [an] amendment to the guideline is intended to clarify the existing guideline, it should be given substantial weight in determining the meaning of the existing guideline").

In *United States v. Monus*, 356 F.3d 714 (6th Cir. 2004), this court adopted the view of the Seventh Circuit and identified three factors to consider when determining if a Guidelines amendment "is properly considered a clarification or a substantive change: '(1) how the Sentencing Commission characterized the amendment; (2) whether the amendment changes the language of the guideline itself or changes only the commentary for the guideline; and (3) whether the amendment resolves an ambiguity in the original wording of the guideline.'" *Id.* at 718 (quoting *United States v. Hartz*, 296 F.3d 595, 599 (7th Cir. 2002)).

In this case, the first factor offers no guidance because the Sentencing Commission did not provide a reason for amending the commentary to include a definition of "victim." *See* U.S.S.G. App. C, amend. 664. The addition of the definition did not change the guideline language itself, only the commentary; therefore the second factor favors a construction of the amendment as clarifying. So does the third factor. Prior to the amendment, the term "victim" was not defined with reference to this specific section. Although sentencing courts could interpret that term sensibly to include fictitious children and undercover officers in fulfillment of the statutory purpose, the new language eliminates any doubt that might otherwise exist.

Finally, the language of the enhancement provision itself does not suggest that its applicability must depend on the effect of the defendant's conduct upon the victim. Put another way, the section is not one that focuses on the resulting harm. Compare, for instance, section 2A3.2(b)(2)(B), which calls for a two-level enhancement when the defendant "unduly influenced the [underage] victim to engage in prohibited sexual conduct." Because the plain language of that section requires that the defendant's conduct have an actual effect on someone, this court held that the "enhancement should not be available in cases involving undercover agents rather than actual minors." *United States v. Chriswell*, 401 F.3d at 469. Unlike that provision, section 2A3.1(b)(2)(A) is not dependent on the effect of the defendant's conduct for its application.

We believe, therefore, that the district court correctly interpreted the term "victim" in U.S.S.G. § 2A3.1(b)(2)(A) to include an undercover officer posing as a ten-year-old girl. The defendant's offense level properly was enhanced by four levels under that section.

## D.

DeCarlo also argues that the district court should have granted his motions for downward departure. One motion was premised on U.S.S.G § 5K2.12; he contended that his offense was the

product of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, based on the investigative techniques employed by Deputy Marshal Dallosta. DeCarlo also insists that his motion for downward departure based on U.S.S.G § 5K2.10 should have been granted because of the wrongful conduct of the "victim." He reasons that Dallosta, believing DeCarlo to have a proclivity for young girls, sought out his web page, pursued him relentlessly, pretended to be a ten-year-old girl and her care giver, and took advantage of him.

However, a district court's decision not to depart downward ordinarily is not reviewable on appeal. *United States v. Stewart*, 306 F.3d 295, 329 (6th Cir. 2002) (noting that "this court has consistently held that the decision by a district court not to depart downward[] from the Guidelines is not reviewable on appeal unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure"). The record in this case reflects that the district court was aware of its discretion. It simply found DeCarlo's motions to be without merit. We will not review that determination.

E.

Finally, the defendant contends on appeal that the sentencing procedure violated his right to a jury trial because the court, not a jury, determined factors that enhanced his sentence, specifically that the victim was younger than age twelve, and a computer was used to facilitate the crime. He believes that *Blakely v. Washington*, 542 U.S. 296 (2004), or *Apprendi v. New Jersey*, 530 U.S. 466 (2000), requires that those issues be submitted to a jury because they increased his maximum sentence. Because this argument is raised for the first time on appeal, DeCarlo must satisfy the plain error standard, which requires him to demonstrate (1) an error; (2) that was plain, meaning obvious or clear; (3) affected DeCarlo's substantial rights; and (4) seriously affected the fairness, integrity or public reputation of the proceedings. *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005).

This case was briefed before the Supreme Court decided *United States v. Booker*, in which the Court determined that it must "excise" 18 U.S.C. § 3553(b)(1) to the extent that the section "require[d] sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure)." *Booker*, 543 U.S. at __, 125 S. Ct. at 764. No constitutional error likely occurred when the district court applied U.S.S.G. § 2A3.1(b)(2)(A) premised on an under-twelve-year-old victim. In order to convict DeCarlo under 18 U.S.C. § 2241(c), the jury had to find that the victim was under the age of twelve. Therefore, that matter actually was presented to the jury and determined beyond a reasonable doubt. The two-level enhancement for computer use was admitted by DeCarlo because he did not object to that fact as reported in his presentence report. *See United States v. Adkins*, 429 F.3d 631, 632-33 (6th Cir. 2005) (holding that the failure to object to the specific portion of a presentence report is generally an admission of a fact). However the weight of authority in this circuit requires that we vacate the sentence and remand "to accord the district court an opportunity to take another look at the sentence" in light of the now-advisory nature of the Guidelines. *United States v. McCraven*, 401 F.3d 693, 700 (6th Cir. 2005). Plain error exists because "it would be fundamentally unfair to allow [DeCarlo's] sentence, imposed under a mandatory Guidelines regime, to stand in light of [*Booker*'s] substantial development in, and alteration of, the applicable legal framework." *United States v. Barnett*, 398 F.3d 516, 530 (6th Cir. 2005).

In reaching the decision to vacate the sentence, we do not suggest that the district court's sentence is unreasonable or that a different disposition is required. However, we believe "[t]he better course . . . is to vacate [DeCarlo's] sentence and remand for resentencing, thus affording the district court the opportunity to re-sentence him in the first instance. 'We would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*.'" *Barnett*, 398 F.3d at 530 (quoting *Oliver*, 397 F.3d at 381 n.3); *see also Williams v. United States*, 503 U.S. 193, 205 (1992)

(stating that "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence") (quoting *Solem v. Helm*, 463 U.S. 277, 290 n.16 (1983)).

III.

For these reasons, we **AFFIRM** the defendant's conviction for aggravated sexual abuse in violation of 18 U.S.C. § 2241(c).  We vacate the defendant's sentence and **REMAND** the matter to the district court with instructions to (1) **VACATE** the defendant's conviction for interstate travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) and (2) **RESENTENCE** the defendant.