**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0447n.06**
**Filed: June 27, 2006**

**No. 06-3336**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| CHARLES GOFF, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

BEFORE: BOGGS, Chief Judge, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In 1998-1999, defendant-appellant Charles Goff, Jr., pled guilty to conspiracy to distribute and to possess with intent to distribute ("PWID") cocaine and was sentenced. In October 2004, a federal grand jury issued an indictment against others that did not charge Goff but merely listed him as a previously convicted coconspirator. In December 2004, the government filed a first superseding indictment charging Goff with conspiracy to distribute and to PWID over 150 kilograms of cocaine between September 27, 1996, and October 12, 2004 ("the instant indictment"). Goff moved to dismiss the instant indictment on statute of limitations, double jeopardy, and prosecutorial misconduct grounds, and the district court denied his motions.

Goff disclaims any intent to appeal the order denying his motion to dismiss due to the prosecution's alleged abuse of the grand jury process ("the grand jury abuse motion"); he states that

he is appealing only the double jeopardy ruling. On that issue, Goff renews his argument that the instant indictment violated his Fifth Amendment right not to be placed twice in jeopardy for the same offense because it sought to try him again for the same conspiracy to which he pled guilty in the 1998 case. The government responds that (1) any double jeopardy defect was mooted by the return of the *second* superseding indictment, and (2) the conspiracy charged in the instant indictment is sufficiently different from the previous case's conspiracy to avoid a double jeopardy violation.

Contrary to Goff's disclaimer, his briefs do challenge the district court's conclusion that the prosecution did not abuse the grand jury process. The government contends that (1) the interlocutory order denying Goff's grand jury abuse motion is interlocutory, and (2) in any event, the district court did not abuse its discretion in concluding that the prosecution did not abuse the grand jury process.

For the reasons that follow, we affirm. The order denying Goff's double jeopardy motion is interlocutory but qualifies for the collateral order exception to the final judgment rule of 28 U.S.C. § 1291. On the merits, the district court did not clearly err in finding that the conspiracy charged in the instant indictment is not the same as the conspiracy to which Goff pled in the previous case. As to the order denying Goff's grand jury abuse motion, it does *not* qualify for the collateral order exception, so we lack jurisdiction to review it.

I.

Title 18 U.S.C. § 3231 gave the district court original jurisdiction, exclusive of state courts, "of all [prosecutions for alleged] offenses against the laws of the United States."

As for our jurisdiction, 28 U.S.C. § 1291 gives "[t]he courts of appeals . . . jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."  The denial of a motion to dismiss an indictment on double jeopardy grounds is not final in the sense of terminating all criminal proceedings in the district court.  *Abney v. United States*, 431 U.S. 651, 657 (1977).

Nonetheless, such an order comes within the "collateral order" exception to § 1291 announced by *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), because the right not to stand trial twice for the same offense "cannot be effectively vindicated" after trial.  *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (discussing *Abney*, 431 U.S. at 658-662).  *See also Will v. Hallock*, ___ U.S. ___, ___, 126 S.Ct. 952, 958 (2006) ("[A] criminal defendant may collaterally appeal an adverse ruling on a defense of double jeopardy . . . .") (citing *Abney*, 431 U.S. at 660); *Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944 (6th Cir. 2006).

II.

Generally, we review de novo the denial of a motion to dismiss an indictment on double jeopardy grounds.  *United States v. DeCarlo*, 434 F.3d 447, 452 (6th Cir. 2006) (citation omitted).  Our review is more deferential, however, when the issue is whether an indictment charged the same conspiracy for which a defendant was previously tried.  The finding that multiple conspiracies existed can be set aside only if it is clearly erroneous.  *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380-81 (6th Cir. 1986) (citation omitted); *United States v. Benton*, 852 F.2d 1456, 1464 (6th Cir. 1988).  Clear error exists only where we are "left with the definite and firm conviction that a mistake has been committed."  *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 732 (6th Cir. 2006).

III.

In October 1996, a grand jury indicted Goff and three others – his father Charles Goff, Sr., Juan Carlos Marin-Avila ("Avila"), and Mario Dejesus Calderon-Valenzuela ("Valenzuela") – in *United States v. Marin-Avila*, No. 03-CR-96-097 (S.D. Ohio). Count 1 charged all four defendants with conspiring to distribute and to PWID cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A) and alleged that Goff accepted delivery of cocaine intended for further delivery. Count 4 charged Goff with knowingly and intentionally attempting to PWID about 39 kg. of cocaine on September 25, 1996, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A). In September 1998, Goff pled guilty to Count 1 (conspiracy) and the U.S. Attorney dismissed Count 4 (attempted PWID). In March 1999, the district court sentenced Goff to 188 months in prison.

Over five years later, in October 2004, the instant case began with an indictment that did not charge Goff but listed him as a previously convicted coconspirator ("the first indictment"). The first indictment alleged in pertinent part that: Goff was an intended recipient of cocaine seized by the Ohio State Police on September 25, 1996; Goff delivered about ten kilograms of cocaine to defendant Earl Marshall between July 1998 and March 1999; and, Goff bought a Plymouth Prowler vehicle with about $45,000 allegedly obtained through illegal drug trafficking.

About two months later, in December 2004, the government filed a first superseding indictment charging Goff in the first count with conspiracy to distribute and to PWID over 150 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) between September 27, 1996, and October 12, 2004 ("the instant indictment"). Count 1 also charged Earl and Tracy

Marshall, Jeff and Clarence Parker, Todd Anthony Brown, Henry Rayford, Kenyatta Moreland, and Bryant Briggs. It alleged that Goff delivered more than ten kilograms of cocaine to Earl Marshall between July 1998 and March 1999.

Count 2 of the instant indictment charged Goff with conspiring to launder money in violation of 18 U.S.C. § 1956(a)(1)(B)(I). Count 2 is based on the allegation that Goff bought the Plymouth Prowler in December 1998 using the proceeds of illegal drug trafficking. None of the individuals charged in Count 2 had been charged in the *Avila* case except Goff.

Goff unsuccessfully moved to dismiss the instant indictment on three grounds. First, he contended that Count 1 (conspiracy) violated double jeopardy because it involved the same conspiracy to which he pled guilty in the *Avila* case. Second, Goff contended that the statute of limitations on both counts had expired because the instant indictment did not allege any overt act by him within the five years preceding the instant indictment.

Goff's third motion contended that the prosecution misused the grand jury process because the instant indictment contradicted the first indictment in five respects: (1) the first indictment did not charge him with any offense, but the instant indictment charged him with two conspiracies; (2) the first indictment identified Goff as part of an overt act, but the instant indictment failed to specify that overt act; (3) the first indictment identified him as a previously convicted coconspirator, while this indictment did not; (4) the first indictment asserted one conspiracy, while this one alleged two; and (5) the instant indictment listed a different start date for the alleged conspiracy than the first indictment.

The district court denied all three of Goff's motions to dismiss. According to Goff, the instant appeal involves only the double jeopardy issue. Goff has not appealed the statute of limitations ruling and he disclaims any intent to appeal the denial of his grand jury abuse motion.

After the district court denied Goff's motions to dismiss the superseding indictment on February 20, 2006, the government filed a second superseding indictment on February 28, 2006. The second superseding indictment is not directly at issue in this appeal. Because Goff and others are scheduled for trial on the second superseding indictment, we granted the government's motion for expedited briefing and decision on March 23, 2006.

IV.

Goff contends that Count 1 of the instant indictment involves the same conspiracy to which he pled guilty in *Avila* and, therefore, the current prosecution violates the double jeopardy clause.

Specifically, Goff complains that the grand jury made three "factual U-turns" from the time of the first indictment to the time of the superseding indictment, without hearing any additional testimony, because it: (1) went from finding that Goff was an already convicted coconspirator to making him a defendant; (2) went from finding that the conspiracy began in 1992 to finding that it began only a couple days after the September 1996 drug stop; and (3) went from finding that that drug stop was part of the charged conspiracy to finding that it was in a different conspiracy.

The government contends that "[a]ny allegation by Goff of grand-jury abuse related to the Superseding Indictment that was returned in 2004 has been effectively mooted by the return of the Second Superseding Indictment earlier this year." Goff responds that "[t]he same issues will likely

arise on a review of the [second superseding indictment] as in the [first superseding indictment]." Neither the government nor Goff cites any authority for their respective positions.

It appears that this court has never squarely addressed whether the return of a superseding indictment moots a defendant's double jeopardy challenge to the original indictment. A district court in our circuit recently held that it does. *United States v. Fisher*, No. 05-50023, ___ F. Supp. 2d ___, 2006 WL 334246, at *2 (E.D. Mich. Feb. 10, 2006) (Gadola, J.) ("Defendant contends that the First Superceding [sic] Indictment so broadens the scope of Count I in duration that it encompasses Defendant's prior conviction, so as to implicate Defendant's double jeopardy interests. . . . This issue is moot, however, because the Second Superceding [sic] Indictment changed the time-frame of the conspiracy so that it no longer overlaps in duration with Defendant's 1997 drug conviction.").

Likewise, at least two of our sister circuits have routinely noted, and explicitly or implicitly approved, the practice of denying as moot motions relating to a superseded indictment. *See, e.g., United States v. Daniels*, 387 F.3d 636, 638 (7th Cir. 2004) ("The district court also found the motion to dismiss Count I of the indictment on statute of limitations ground moot in light of the superceding indictment."), *cert. denied*, 544 U.S. 911 (2005); *United States v. Rojas*, 7 F. App'x 9, 11 (2d Cir. 2001) ("[A]s the district court later found, the 404(b) motion was moot in light of the superseding indictment."); *United States v. Ben Zvi*, 242 F.3d 89, 94 (2d Cir. 2001) ("[T]rial counsel did not pursue dismissal of the conspiracy count, taking the position . . . that '[t]hat portion of the motion involving the statute of limitations [defect of the first indictment] was eventually mooted by

the Government's filing of the [Second Indictment].'"); *United States v. Powers*, 168 F.3d 943, 948 (7th Cir. 1999) (appeals in which defendants claimed they were entitled to release under order requiring government to dismiss indictment and seek superseding indictment were rendered moot when government obtained superseding indictment and defendants were confined under that later indictment).

Indeed, just as an amended complaint supplants the original complaint and becomes the only live complaint in a civil case, *Parks v. Federal Express Corp.*, 1 F. App'x 273, 277 (6th Cir. 2001), a superseding indictment supplants the earlier indictment and becomes the only indictment in force.

However, this does not necessarily preclude our consideration of Goff's double jeopardy challenge to the first superseding indictment. The second superseding indictment did not materially alter the nature, scope, and duration of the conspiracy charged against Goff. The government itself states that "[o]n February 28, 2006, the grand jury returned a Second Superseding Indictment, which made some *minor adjustments* to the charges against Goff and added two tax counts against co-defendant Glen Hurst." Goff does not dispute this characterization of the second superseding indictment and a comparison of the indictments confirms it.

Accordingly, if the conspiracy charged in the first superseding indictment is the same as the conspiracy to which Goff pled guilty in *Avila*, the second superseding indictment will suffer from the same infirmity. *See United States v. Lee*, 622 F.2d 787, 789 (11th Cir. 1980) ("The filing of the second superseding indictment . . . does not moot this appeal . . . because the conspiracy counts in

the first and second superseding indictments are identical so that any decision here would control the disposition of a motion directed at the subsequent indictment.").

Therefore, we consider the merits of Goff's claim that the conspiracy count subjects him to double jeopardy. We agree with the district court that it did not.

Our Constitution's Double Jeopardy Clause provides that "no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *United States v. DeCarlo*, 434 F.3d 447, 454 (quoting U.S. CONST. AMEND. V). It protects the individual against "a second prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense." *United States v. Turner*, 324 F.3d 456, 461 (6th Cir. 2001) (citation omitted). The goal is to ensure that "the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continued state of anxiety and insecurity . . . ." *United States v. Sinito*, 723 F.2d 1250, 1255 (6th Cir. 1983) (citations omitted).

"In a conspiracy case it is the agreement which forms the nucleus of the offense." *Id.* at 1256. "Therefore, a determination of whether the government can prosecute on more than one conspiracy rests on whether there exists more than one agreement." *Id.*

To make this determination, we employ the five-factor totality of the circumstances test set forth in *United States v. Jabara*, 644 F.2d 574 (6th Cir. 1981). *Sinito*, 723 F.2d at 1256. We consider (1) the alleged time period covered by the conspiracy, (2) the people who allegedly acted as coconspirators, (3) the statutory offenses charged, (4) the overt acts charged, or any other

description of the charged offenses which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) the places where the events alleged as part of the conspiracy took place. *Id.* "Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses." *Id.* at 1256-57 (citations omitted).

As to the first factor, the conspiracy to which Goff pled in *Avila* ran from March 5, 1996, until October 16, 1996 (the date of the *Avila* indictment), while the instant indictment charges a conspiracy from September 27, 1996, through October 12, 2004 (the date of the instant indictment). There is little overlap between the time frame of the two conspiracies; perhaps more significantly, Goff's involvement in the first conspiracy ended on September 25, 1996, when he was arrested after the attempted delivery of cocaine, i.e., before the instant alleged conspiracy even began.

As to the second factor, there is no overlap whatsoever between the three coconspirators alleged in *Avila* and the nine alleged here: the *Avila* indictment charged Goff with conspiring with his father, Avila, and Valenzuela, while the instant indictment charges Goff with conspiring with Earl and Tracy Marshall, Tico Hill, Jeff and Clarence Parker, Todd Anthony Brown, Kenyatta Moreland, Henry Rayford, and Bryant Briggs. As to the third factor, the *Avila* indictment charges Goff under the same statutes as the instant indictment, namely 21 U.S.C. §§ 841(a)(1) & (b)(1)(A).

As to the fourth factor, the instant indictment and the *Avila* indictment seek to punish conduct that is generally of the same nature but is not nearly of the same scope, particularly as to Goff's alleged concrete action in furtherance of the conspiracies. *Avila* charged a conspiracy

involving *39 kilograms* of cocaine, while the instant indictment charges a conspiracy that is far larger in terms of the number of members, the quantity of drugs, the commission of money laundering, and the resale of drugs. Namely, the instant indictment charges Goff, *et al.* with conspiracy to PWID and to distribute *over 100 kilograms* of cocaine, while the *Avila* indictment charged that that conspiracy also aimed to launder the proceeds of the conspiracy in order to avoid detection and payment of taxes, while allowing members to enjoy the material benefits of money generated by the conspiracy.

Moreover, Goff's overt acts in *Avila* included (1) possessing a large sum of cash and the keys to a Chevrolet Tahoe vehicle with a hidden compartment of the type that can be used to hide contraband, and (2) accepting delivery of cocaine on September 25, 1996. The instant indictment, by contrast, alleges that Goff committed the overt act(s) of delivering over ten kilograms of cocaine to Earl Marshall between July 1998 and March 1999, and it does not mention his possession of a large sum of cash or his purchase or use of the vehicle with the hidden compartment. As the district court noted, Goff's alleged overt acts in this conspiracy took place over two years after his overt acts in the *Avila* conspiracy.

The fifth factor, where the conspiracies allegedly took place, was not discussed by the briefs or by the district court. Both the *Avila* indictment and the instant indictment allege that Goff and his conspirators bought cocaine from outside the Southern District of Ohio and brought it into that district for resale.

In sum, at least three of the five factors militate against finding the *Avila* conspiracy to be the same as the conspiracy charged here. *See Sinito*, 723 F.2d at 1256-57 ("Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses."). Therefore, the district court did not clearly err in finding that the two alleged conspiracies are different and that Goff's double jeopardy challenge to the first superseding indictment lacks merit. For the same reasons, Goff cannot succeed on a double jeopardy challenge to the *second* superseding indictment, on which he will be tried.

V.

Goff's notice of appeal seems to state that he is appealing both the district court's denial of his motion to dismiss on double jeopardy grounds *and* its denial of his grand jury abuse motion. Goff's notice of appeal reads, "This appeal is made to the exten[t] that the order is appealable, namely the double jeopardy issue *and the disclosure of grand jury testimony* that would have assisted in the resolution of the double jeopardy issue."

But Goff's appellate reply brief expressly denies that he is appealing the denial of his motion to dismiss due to abuse of the grand jury process:

> None of the Government's three issues address double jeopardy. And none of the Government's three issues address the absence of evidence presented to the Grand Jury about Mr. Goff between the Original Indictment and the Superseding Indictment. Instead, the Government seeks to focus this Court's attention on our motion to dismiss for grand jury abuse, which is not the subject of this appeal.

When appeal is permitted and there is no certificate of appealability or other order limiting the issues on appeal, it is the appellant who determines the scope of the appeal. We simply take Goff at his word that the denial of the grand jury abuse motion is not part of this appeal.

In any event, we lack jurisdiction to review the denial of Goff's grand jury abuse motion. That order is not "final" under § 1291 in the sense of terminating all criminal proceedings in the district court. *United States v. Jolivette*, 257 F.3d 581, 583 (6th Cir. 2001) ("Final judgment in a criminal case . . . means sentence.") (quoting *Corey v. United States*, 375 U.S. 169, 174 (1963)). It is not immediately appealable, then, unless it satisfies the collateral order doctrine, which "excepts a narrow range of interlocutory decisions from the general rule." *Kimble v. Hoso*, 439 F.3d 331, 333-34 (6th Cir. 2006) (citing *Cohen*, 337 U.S. at 541).[1] An interlocutory order is immediately appealable if it satisfies three criteria: (1) "'it must conclusively determine the disputed question'"; (2) "that question must involve a claim 'of right separable from, and collateral to, rights asserted in the action,'" *Kimble*, 439 F.3d at 334 (citations omitted); and (3) the order must be "effectively unreviewable on appeal from a final judgment." *United States v. Young*, 424 F.3d 499, 503 (6th Cir. 2005) (citing *Cohen*, 337 U.S. at 546).

---

[1]28 U.S.C. § 1292(a) authorizes immediate review of certain interlocutory orders regarding injunctions, receivership, or admiralty issues, so it does not apply. Section 1292(b) authorizes a district court to authorize an immediate appeal from an interlocutory order if it determines that certain criteria are met, but this provision applies only in civil actions.

Lastly, Congress has authorized the Supreme Court to promulgate rules treating additional types of interlocutory orders as immediately appealable. *See* 28 U.S.C. §§ 1292(e) and 2072(c). The Supreme Court has not promulgated any rule that would permit the immediate appeal of this order.

- 13 -

Examples of collateral final orders are orders denying qualified or absolute immunity that address only legal issues and do not address what facts the parties might be able to prove,[2] an order empaneling separate juries for the guilt and sentencing phases of a criminal trial, *see Young*, 424 F.3d at 503-04, and an order allowing a party to obtain discovery from a person about advice the person received from attorneys, *see Ross v. City of Memphis*, 423 F.3d 596, 599-600 (6th Cir. 2005).

"As a general matter, an order denying a motion to dismiss does not end the litigation on the merits and is ordinarily not subject to appellate review until a final judgment has been entered." *Archie v. Lanier*, 95 F.3d 438, 442 (6th Cir. 1996) (citation omitted). Moreover, the Supreme Court has "repeatedly stressed that the 'narrow' exception should stay that way and never be allowed to swallow the general rule . . . that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated[.]" *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citing *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 270 (1982)) (other citation omitted). Just a few months ago, the Court unanimously reaffirmed its reluctance to approve exceptions to the final judgment rule, stating, "we have meant what we have said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership." *Will v. Hallock*, ___ U.S. ___, ___, 126 S.Ct. 952, 958 (2006).

---

[2]*See, e.g., Silberstein v. City of Dayton*, 440 F.3d 306, 310-11 (6th Cir. 2006) (reviewing order that denied qualified immunity); *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 434 (6th Cir. 2006) (reviewing order that denied absolute immunity).

The Supreme Court also advises that it is especially appropriate to construe the collateral order exception narrowly in criminal cases. *See Flanagan v. United States*, 465 U.S. 259, 270 (1984) ("'The final judgment rule is the dominant rule . . . . *Particularly is this true of criminal prosecutions.*' . . . The exceptions to the final judgment rule in criminal cases are rare.") (emphasis added) (quoting *DiBella v. United States*, 369 U.S. 121, 126 (1962)) (other citations omitted); *see also Young*, 424 F.3d at 503-04 (citing *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)).

In any event, precedent obligates us to hold that the collateral order doctrine does not authorize immediate review of the denial of Goff's grand jury abuse motion.

> The *Cohen* exception permits interlocutory appeals *in only two situations* in criminal prosecutions: (1) there may be immediate appeals from orders denying motions to dismiss on double jeopardy grounds (*Abney*) and (2) there may be immediate appeals from orders denying motions to reduce bail before trial.

*United States v. Bratcher*, 833 F.2d 69, 72 (6th Cir. 1987) (emphasis added).

Therefore, we lack jurisdiction to review the order denying Goff's grand jury abuse motion. *Accord United States v. LaRouche Campaign*, 829 F.2d 250, 251 (1st Cir. 1987) ("They seek to bring an interlocutory appeal from the district court's . . . orders denying their motion to dismiss the indictment because of various alleged abuses of the grand jury process [including alleged attempt to undermine impartiality]. We conclude we lack appellate jurisdiction to hear these appeals because the orders are not immediately appealable.").

VI.

For the foregoing reasons, we affirm the denial of Goff's motion to dismiss the first superseding indictment as violative of his double jeopardy rights. We dismiss for lack of jurisdiction Goff's appeal from the order denying his grand jury abuse motion.

**Julia Smith Gibbons, concurring.** I agree with Judge Griffin's analysis except as to one point. The majority opinion, relying on *United States v. Benton*, 852 F.2d 1456, 1464 (6th Cir. 1988), and *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380-81 (6th Cir. 1986), concludes that, when the issue is whether an indictment charges the same offense as a previous indictment under which a defendant was convicted, we review a finding that multiple conspiracies exist for clear error. This statement sweeps too broadly in my view, and in this case I would review the district court's determination de novo and not for clear error.

Both *Benton* and *In re Grand Jury Proceedings* involved situations in which the district court made a factual finding that conspiracies were not the same offense based on extensive evidentiary records–a trial transcript in *Benton* and both a trial record and grand jury transcripts in *In re Grand Jury Proceedings*. Our court appropriately and naturally reviewed the factual finding for clear error. Here, however, the district court had no evidentiary record and was thus ruling that, based on the allegations of the 1998 indictment and the 2004 superseding indictment, the indictments did not charge the same conspiracy as a matter of law.[3] We should review this ruling de novo, as we customarily review denials of a motion to dismiss an indictment on double jeopardy grounds. *See*

_____

[3] By contrast, in *United States v. Jabara*, 644 F.2d 574, 577 (6th Cir. 1981), where our court first approved the "totality of the circumstances" test which we apply today, defendants made a nonfrivolous claim of double jeopardy that could not be resolved without an evidentiary record. The court set forth a structure for the proof in such situations, placing the burden on the government to prove the existence of two conspiracies by a preponderance of the evidence. *Id.* at 576-77. The court also properly noted that factual findings are reviewed for clear error, whether based on documentary evidence or oral testimony. *Id.* at 577.

*United States v. DeCarlo*, 434 F.3d 447, 452 (6th Cir. 2006). *Benton* and *In re Grand Jury Proceedings* do not suggest otherwise.

The standard of review makes no difference in the ultimate result in this appeal. The indictments on their faces allege two distinct conspiracies, and there is no double jeopardy violation. Yet, it is important to clarify the procedural context and to note that neither we nor the district court relied on an evidentiary record. The double jeopardy issue could conceivably arise again for consideration at a later time with an evidentiary record if an argument is made that the proof at trial shows that the conspiracy charged here was in fact the same one to which Goff previously pled guilty.