*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-1395

ANTHONY LEON COLLIER,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 05-00130—Robert Holmes Bell, Chief District Judge.

Argued: May 29, 2007

Decided and Filed: July 12, 2007

Before: ROGERS and COOK, Circuit Judges; and DOWD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kenneth P. Tableman, Grand Rapids, Michigan, for Appellant. John F. Salan, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Kenneth P. Tableman, Grand Rapids, Michigan, for Appellant. John F. Salan, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

COOK, Circuit Judge. Anthony Leon Collier, who pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), appeals his sentence, which was enhanced under the Armed Career Criminals Act ("ACCA"), 18 U.S.C. § 924. We vacate his sentence and remand for resentencing.

I

Federal agents arrested Collier, a prior felon, after discovering he was pawning stolen firearms in Wyoming, Michigan. The government charged Collier as a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Collier pleaded guilty, but after learning that he faced not a ten-year

---

[*] The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

maximum sentence but a fifteen-year minimum sentence under the ACCA, he withdrew his guilty plea. In exchange for the government's agreement to dismiss other charges, Collier again pleaded guilty.

The Presentence Investigation Report ("PSIR") concluded that Collier had three prior "violent felonies" under the ACCA and thus faced a base-offense level of 33 under U.S.S.G. § 4B1.4(b)(3)(B). The three Michigan felonies said to qualify were (1) breaking and entering a dwelling with intent to commit larceny, (2) prison escape, and (3) fourth-degree fleeing and eluding a police officer. At sentencing, defense counsel conceded that breaking and entering is a "violent felony," but argued that the other two are not. The court determined that these two offenses are "violent felonies." Collier appealed, renewing his argument that neither prison escape nor fourth-degree fleeing and eluding is a "violent felony."

## II

This court reviews de novo a district court's legal conclusion that a crime constitutes a "violent felony" under the ACCA. *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005) (citing *United States v. Martin*, 378 F.3d 578, 580 (6th Cir. 2004), and *United States v. Cooper*, 302 F.3d 592, 594 (6th Cir. 2002)). The ACCA provides that anyone convicted as a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), after having been convicted of three "violent felonies" shall be imprisoned for not less than fifteen years, *id.* § 924(e)(1).[1] It defines a "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that . . . (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

*Id.* § 924(e)(2)(B). Neither of the two offenses at issue on appeal is an enumerated offense, involves explosives, or has force as an element[2]—instead, whether either is a "violent felony" turns on whether it "involves conduct that presents a serious potential risk of physical injury to another."[3] The government bears the burden of proving that the defendant qualifies for a sentence enhancement under the ACCA. *Hargrove*, 416 F.3d at 494.

*Taylor v. United States* instructed that to determine whether an offense qualifies as a "violent felony," a court should follow "a formal categorical approach." 495 U.S. 575, 600 (1990). Under the categorical approach, the sentencing court should generally confine its inquiry to the "statutory definitions of the prior offenses," *id.*, but it may also look to "the charging paper and jury instructions," *id.* at 602; *see also Shepard v. United States*, 544 U.S. 13, 16 (2005) (explaining *Taylor*). The court should not, however, look "to the particular facts underlying [the defendant's prior] convictions." *Id.* at 600.

---

[1] Section 4B1.4 of the Guidelines implements this statutory mandate.

[2] Michigan's fleeing and eluding offense does not have force as an element. *Martin*, 378 F.3d at 582. Prison escape does not have force as an element because (as the parties agree) the statute could apply to "walk away" or "failure to report" prison escape, not just a jailbreak. *Cf., e.g., United States v. Harris*, 165 F.3d 1062, 1067 (6th Cir. 1999) (holding that force is not an element of prison escape under Tennessee law).

[3] This so-called "otherwise" clause also appears in the U.S.S.G. § 4B1.2 definition of "crime of violence," and in *United States v. Houston*, we concluded that the "otherwise" clause should be interpreted consistently in both contexts. 187 F.3d 593, 594–95 (6th Cir. 1999). Therefore, in determining whether Collier's prior convictions qualify as "violent felonies," we will also draw on cases analyzing whether offenses qualify as "crimes of violence" under the "otherwise" clause.

*Shepard v. United States* slightly expanded the range of sources a court may consider in determining whether a particular offense constitutes a "violent felony." 544 U.S. at 16. Although it may not look to "police reports or complaint applications," "a later court determining the character of [a prior crime for the purposes of the ACCA] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.*

III

Collier argues that his Michigan conviction for prison escape is not a "violent felony" under the ACCA. We agree.

A.          *Taylor*'s Categorical Approach

Michigan defines prison escape, in relevant part, as follows:

(1) A person imprisoned in a prison of this state who breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts to escape from prison, is guilty of a felony, punishable by further imprisonment for not more than 5 years. . . . (3) A person who escapes from the lawful custody of a guard, prison official, or an employee while outside the confines of a prison is guilty of a violation of this section.

Mich. Comp. Laws Ann. § 750.193. The appellate record does not include the charging documents or jury instructions, which leaves only the statutory definition under *Taylor*'s "categorical approach."

In *United States v. Harris*, 165 F.3d 1062, 1067–68 (6th Cir. 1999), this court considered whether the defendant's Tennessee conviction for prison escape was a "crime of violence" under the "otherwise" clause of U.S.S.G. § 4B1.2. The Tennessee statute at issue in *Harris* made it a felony for "'any person confined in a county workhouse or jail or city jail or municipal detention facility upon any charge of or conviction of a criminal offense constituting a felony [to] escape or attempt to escape therefrom.'" *Id.* at 1067 (quoting Tenn. Code Ann. § 39-5-706 (repealed 1989)). *Harris* held this offense a "crime of violence," reasoning that

[E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so. . . . A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time. Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*Id.* at 1068 (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)). The government asks us to extend *Harris* to Michigan's escape statute, but we find *Harris* distinguishable on several grounds.

First, *Harris* involved former Tennessee Code § 39-5-706, which applied to prisoners "confined in a county workhouse or jail or city jail or municipal detention facility." *Id.* at 1067. A jailbreak certainly deserves categorical treatment as a "violent felony," and we therefore cannot quarrel with the result of *Harris* (or *Gosling*, which considered a state statute concerning escapes

from "County Jail").  *See Gosling*, 39 F.3d at 1142 (citing N.D. Cent. Code § 12-16-05 (repealed 1973)).  But Mich. Comp. Laws Ann. § 750.193 is not limited to prisoners confined in jail or a similar facility:  section 750.193 apparently applies to Collier even though his "escape" was simply stepping off a public Greyhound bus—where he was unaccompanied by any correctional officials—and failing to report to the facility to which he was being transferred.  We doubt that a statute covering this "failure to report" variety of escape necessarily "involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).

We recognize that the circuits are split on whether the distinction between a jailbreak and a "walk away" is meaningful.  Some have said or suggested that a "walk away" escape should not be considered categorically violent.[4]  Others have rejected any distinction between a jailbreak and a "walk away," typically reasoning that the "potential risk" officers might encounter in attempting to re-apprehend the escapee is "serious" enough to justify characterizing the offense as violent.[5]  The D.C. Circuit, however, has noted that this reasoning proves too much.  That is, "While it may be true that the recapture of an escapee inherently contains a risk of violent encounter between the escapee and the arresting officers, the same is true as to the capture of any lawbreaker"; according to this logic, "all crimes become crimes of violence."  *United States v. Thomas*, 333 F.3d 280, 282 (D.C. Cir. 2003).

Our position on the issue has been less than clear.  *Harris* echoed *Gosling*'s concern that no matter how the defendant escapes, he might endanger officers attempting to recapture him.  *See* 165 F.3d at 1068.  But in *United States v. Anglin*, we noted that "the passage consistently quoted from *Gosling* in support of finding that escape is a crime of violence explicitly makes reference to circumstances that are only applicable in the prison break context."  169 F. App'x 971, 975 (6th Cir. 2006) (unpublished); *accord United States v. Chambers*, 473 F.3d 724, 727 (7th Cir. 2007) ("[T]he reference to escaping from a jail suggests that the [*Gosling*] court wasn't thinking about walkaway escapes, or failures to return or report, but about jail breaks . . . .  Its ruminations should not be treated as authoritative in a case that does not involve a jail break.").

Fortunately, we need not rely solely on a distinction between jailbreaks and "walk away" escapes to distinguish *Harris*, as a nuance of Michigan law also counsels against extending *Harris* to Collier's case.  Tennessee courts have consistently interpreted escape to be a "continuing offense"

---

[4] *See, e.g.*, *United States v. Chambers*, 473 F.3d 724, 726 (7th Cir. 2007) (calling it "an embarrassment to the law when judges . . . conjecture as to the possible danger of physical injury posed by criminals who fail to show up to begin serving their sentences or fail to return from furloughs or to halfway houses"); *United States v. Piccolo*, 441 F.3d 1084, 1089 (9th Cir. 2006) ("While an escapee who flees a secured facility or the custody of an armed guard presents a serious risk of injury to himself and others, the same cannot be said for an escapee who leaves a halfway house with permission and fails to return."); *United States v. Thomas*, 333 F.3d 280, 283 (D.C. Cir. 2003) ("A prisoner not returning to a halfway house or sneaking away from an unguarded position in the night may not inherently create a risk of harm to others.  A prisoner escaping from the custody of an officer does create such an inherent risk."); *United States v. Adkins*, 196 F.3d 1112, 1119 (10th Cir. 1999) (McKay, J., concurring) ("There is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody . . . and of failure to return from authorized departure from actual custody.").

[5] *See, e.g.*, *United States v. Winn*, 364 F.3d 7, 12 (1st Cir. 2004) (citing *Gosling* to hold that the defendant's failure to return to a halfway house was a "crime of violence" because of the potential risk to officers attempting to capture an escapee); *United States v. Luster*, 305 F.3d 199, 202 (3d Cir. 2002) (holding that even "walk away" escape is a "crime of violence" because of the danger posed by an escapee as he "continue[s] to evade police and avoid capture"); *United States v. Nation*, 243 F.3d 467, 472 (8th Cir. 2001) ("[E]very escape, even a so-called 'walkaway' escape, involves a potential risk of injury to others. . . . Even the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee.").

that lasts until the defendant is re-apprehended,[6] but Michigan courts have consistently held that escape is complete once the defendant leaves custody without having been discharged.[7] When a state has defined escape as lasting until recapture, it seems more sensible to consider the possible circumstances of this event—for instance, a dangerous confrontation with police—when deciding whether escape is a "violent felony" or "crime of violence." But when a state has defined escape as complete when the defendant leaves custody without having been discharged, it is inappropriate to speculate about the circumstances of the defendant's ultimate apprehension because that conduct simply is not part of the offense.

Some cases characterizing escape as "violent" depend at least in part on the premise that escape is a continuing offense. For instance, in *United States v. Rodgers*, we rejected the defendant's request that the court ignore the circumstances of his apprehension when deciding whether to categorize his escape from federal custody as a "crime of violence," reasoning that

> [E]scape from federal custody in violation of 18 U.S.C. § 751(a) is a continuing offense[8] that includes a defendant's failure to return to custody after the initial escape. . . . Rodgers was still in the course of committing the offense of escape when he fled and resisted arrest. These acts thus also are relevant conduct for the sentencing of Rodgers's escape offense because they occurred during the commission of that offense.

No. 99-5776, 2000 WL 1434706, at *3 (6th Cir. Sept. 19, 2000) (unpublished) (citations omitted and footnote added). Similarly, the Third Circuit held that escape under 18 Pa. Cons. Stat. § 5121(a) is a "crime of violence," reasoning in part that "[e]scape is a continuing crime" carrying the potential for violence when the escapee "continue[s] to evade police and avoid capture." *United States v. Luster*, 305 F.3d 199, 202 (3d Cir. 2002).

Michigan has chosen to define escape not as a continuing offense, but as complete when the defendant leaves custody without having been discharged. A federal sentencing court considering an ACCA enhancement under the categorical approach must take state law as it finds it, including state courts' interpretations of state law. *See, e.g.*, *James v. United States*, 127 S. Ct. 1586, 1594, 1596 (2007); *United States v. Hemingway*, 38 F. App'x 142, 146–47 (4th Cir. 2002) (unpublished); *United States v. Tighe*, 266 F.3d 1187, 1196 (9th Cir. 2001); *United States v. Davis*, 16 F.3d 212, 217–18 (7th Cir. 1994); *United States v. Martinez*, 954 F.2d 1050, 1053 (5th Cir. 1992); *United States v. Lane*, 909 F.2d 895, 903 (6th Cir. 1990). The tension with Michigan law we would create

---

[6] *See, e.g.*, *State v. Campbell*, No. E2005-01849-CCA-R3CD, 2006 WL 3371126, at *8 (Tenn. Crim. App. Mar. 5, 2007) (unpublished); *State v. Tidewell*, No. 85-72-III, 1986 WL 3674, at *1 (Tenn. Crim. App. Mar. 27, 1986) (unpublished).

[7] *See, e.g.*, *People v. Jackson*, 394 N.W.2d 480, 485 (Mich. Ct. App. 1986) (citing Mich. Comp. Laws Ann. § 750.193); *People v. Mendoza*, 310 N.W.2d 860, 863–64 (Mich. Ct. App. 1981) (citing *People v. Johnson*, 233 N.W.2d 246 (Mich. Ct. App. 1975)). In *United States v. Martin*, 378 F.3d 578, 582 (6th Cir. 2004), the court suggested in a casual dictum that Michigan considers escape a continuing offense. But *Martin* does not even purport to be interpreting Michigan law: it cites only a D.C. Circuit case referring to federal law and the law of the District of Columbia. *Id.* (citing *United States v. Thomas*, 361 F.3d 653, 656 & n.4 (D.C. Cir. 2004), *vacated on other grounds*, 543 U.S. 1111 (2005)). The Michigan precedent cited above makes clear that Michigan does not consider escape a "continuing offense."

At oral argument, counsel for the government suggested that escape under Michigan law *is* a "continuing offense." Counsel argued that because Collier "continued" to be *wanted* for escape until he was arrested, then escape must be a "continuing offense." This argument is unpersuasive. Not only does it contradict the Michigan precedent we cite above, but it would make *every* offense a "continuing offense."

[8] *United States v. Bailey* held that escape from federal custody, 18 U.S.C. § 751(a), is a "continuing offense." 444 U.S. 394, 413 (1980) (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

by speculating about the circumstances of an escapee's ultimate apprehension counsels against extending *Harris* to Collier's case.

For the reasons discussed above, we conclude that Collier's conviction for "failure to report" escape in a jurisdiction (Michigan) that defines escape as complete upon leaving custody without having been discharged is not categorically a "violent felony."

B.       Additional Sources Permitted Under *Shepard*

As noted above, in addition to the sources permitted under *Taylor*'s categorical approach, *Shepard* allows "a later court determining the character of a [prior crime for purposes of the ACCA to consider the] written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." 544 U.S. at 16. We conclude that even with the aid of these sources, the government cannot carry its burden of demonstrating that Michigan's escape offense "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Therefore, we conclude that Collier's Michigan conviction for escape does not qualify as a "violent felony" under the ACCA.

According to the PSIR, nearly nine months after Collier failed to report to the correctional facility to which he was being transferred, police officers attempted a traffic stop of his car. Collier fled, first in his car and later on foot. During the chase, Collier dropped a .380 caliber semiautomatic handgun before being apprehended. The government argues that *Shepard* allows the sentencing court considering an ACCA enhancement to rely on any facts recited in the PSIR to which the defendant does not object[9] and that the facts in Collier's PSIR support characterizing his Michigan escape offense as "violent" under the ACCA.

In our view, however, the sentencing judge cannot rely on assented-to facts recited in the PSIR generated in connection with a felon-in-possession conviction to determine the character of the defendant's prior offenses. *Shepard* speaks of a "*later* court" relying on "any explicit factual finding by the *trial* judge to which the defendant assented," 544 U.S. at 16 (emphasis added), which seems to mean facts assented to in the predicate-offense proceedings, not facts assented to in later felon-in-possession proceedings. This interpretation coincides with *Taylor*'s understanding that in passing the ACCA, Congress did not intend sentencing courts "to engage in an elaborate factfinding process regarding the defendant's prior offenses." 495 U.S. at 601; *see also Shepard*, 544 U.S. at 20 (noting that *Taylor* "respect[s] Congress's adoption of a categorical criterion that avoids *subsequent* evidentiary enquiries into the factual basis for the earlier conviction" (emphasis added)).

Moreover, even if the sentencing judge considering an ACCA enhancement *could* rely on facts recited by the felon-in-possession PSIR and not disputed by the defendant, it would avail the government of nothing in this case. Under Michigan law, Collier's escape was complete long

---

[9]The government cites no authority for this proposition. According to our review of precedent, *United States v. DeCarlo* may be the most favorable to the government's position, but even this case is inapposite. 434 F.3d 447 (6th Cir. 2006). In *DeCarlo*, the defendant was charged with traveling in interstate commerce with intent to engage in a sexual act with a minor female. *Id.* at 449. The PSIR recited that the defendant had used a computer to facilitate the crime. *Id.* at 460. The defendant failed to object to this fact, and the district court applied a two-level enhancement under U.S.S.G. § 2A3.1(b)(6)(B). *Id.* On appeal, this court concluded that the defendant's silence constituted an admission and upheld the district court's application of the enhancement. *Id.* But *DeCarlo* concerns the defendant's admission by silence of facts pertaining to the crime for which he was then being sentenced, not facts pertaining to *prior* convictions.

before[10] the chase the PSIR describes.  *See supra* note 7.  That later conduct is simply not part of the offense and therefore is irrelevant to determining the nature of the crime under ACCA.

For these reasons, we conclude that Collier's conviction for prison escape under Mich. Comp. Laws Ann. § 750.193 does not qualify as a "violent felony" under the ACCA.

IV

The PSIR identified only three crimes as "violent felonies" to support Collier's ACCA enhancement.  Because we determine that one of these crimes was not a "violent felony," and the ACCA requires three, we must vacate his sentence and remand for resentencing.[11]

---

[10]We need not determine whether Collier's escape was complete the moment he stepped off the Greyhound bus or the moment he did not arrive as scheduled at the destination correctional facility.  The police chase the government points to occurred nearly *nine months* after the day Collier failed to report.

[11]Because we remand for resentencing based only on the escape offense, we need not consider whether Collier's Michigan conviction for fourth-degree fleeing and eluding is a "violent felony," though we note that this court has spoken on the issue in the past.  *Compare United States v. Martin*, 378 F.3d 578, 582–84 (6th Cir. 2004) (holding that Michigan's third-degree fleeing and eluding offense is a "crime of violence" under the "otherwise" clause of U.S.S.G. § 4B1.2, and strongly suggesting the same of the fourth-degree offense), *and United States v. McGhee*, 161 F. App'x 441, 448, 450 (6th Cir. 2005) (unpublished) (holding that the fourth-degree offense categorically constitutes a "crime of violence" under U.S.S.G. § 4B1.2), *with United States v. Foreman*, 436 F.3d 638, 643 (6th Cir. 2006) (holding "that the categorical approach is not determinative of whether [Michigan's offense of] fourth degree fleeing and eluding is a 'crime of violence'").