**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0433n.06
Filed: July 21, 2008

**Nos. 07-3376, 07-3438**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| JASON WESTERFIELD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

BEFORE: KEITH, GRIFFIN, and GIBSON, Circuit Judges.[*]

GRIFFIN, Circuit Judge.

Defendant Jason Westerfield was indicted in the United States District Court for the Northern District of Ohio for being a convicted felon in possession of a firearm. Westerfield pleaded guilty to the indictment and, after the district court concluded that Westerfield was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), was sentenced to a term of 180 months of imprisonment.

While that case was still pending, a federal grand jury in the Northern District of Ohio returned a multi-defendant, 55-count indictment, naming Westerfield in seven counts, alleging a conspiracy to possess with the intent to distribute cocaine and cocaine base. Following a jury trial,

_____

[*]The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Westerfield was found guilty on one count, which charged him with possessing cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(b)(1)(B). After finding Westerfield was subject to a sentencing enhancement as a career offender, the district court sentenced him to a term of 360 months of imprisonment.

Westerfield now appeals. In case number 07-3438, he argues that the district court erroneously found him subject to the fifteen-year mandatory minimum sentence provided in the ACCA. In case number 07-3376, he contends that he was prejudiced by having been seen outside the courtroom in handcuffs by potential members of the jury, that the district court erred in denying his motion for a new trial that was predicated on the government's alleged failure to establish a chain of custody for crack cocaine, and that the court erred in sentencing Westerfield as a career offender pursuant to U.S.S.G. § 4B1.1. In response to the government's request, the two cases have been consolidated for briefing and disposition.

For the reasons set forth below, we conclude that Westerfield's appeals lack merit and accordingly affirm his convictions and sentences.

I.

On August 31, 2005, a federal grand jury sitting in the United States District Court for the Northern District of Ohio returned a one-count indictment against defendant Jason Westerfield, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On November 14, 2006, Westerfield pleaded guilty to the charge. During sentencing proceedings on March 6, 2007, the district court found that Westerfield was subject to the fifteen-year mandatory

minimum sentence provided in the ACCA, 18 U.S.C. § 924(e), due to his prior convictions for breaking and entering, extortion and abduction, and attempted retaliation. The court sentenced Westerfield to the statutory minimum term of 180 months of imprisonment. Defendant timely appealed his sentence.

While Westerfield's felon-in-possession charge was still pending, a second grand jury sitting in the same federal district returned a 22-defendant, 55-count indictment, charging Westerfield with engaging in a conspiracy to possess and distribute cocaine and cocaine base. Westerfield pleaded not guilty, and the case proceeded to trial. At trial, the jury received testimony from Aisha Ford, a codefendant in the case who had previously pleaded guilty and agreed to testify as part of her plea agreement. Ford testified that Westerfield had moved into her apartment for eight days during February 2005. She testified further that after Westerfield had moved out of her apartment, he informed her that he had left a Nike shoe box in her apartment and asked her to get rid of the box. Ford stated that she had inspected the box and found drugs inside. The government offered evidence indicating that Westerfield had requested his friend Jacquoia Ginn to retrieve the box from Ford and to store it at Ginn's home.

The government then offered the testimony of Detective Chuck Metcalf of the Richland County Sheriff's office, who testified that during a search of Ginn's residence, he discovered the Nike box, containing a scale, marijuana, powder cocaine, and crack cocaine. Although Metcalf testified that the box contained powder cocaine, the inventory sheet filled out after the search was conducted listed only crack cocaine. Metcalf also conceded that, although the crack cocaine was

- 3 -

taken to the police crime lab for testing, the chain of custody form for the cocaine did not indicate that it had been removed from police inventory. He testified further that the cocaine was sealed both when it was submitted to the lab for testing and when it was returned.

Following a six-day trial, the jury returned a guilty verdict against Westerfield with respect to Count 30, which charged him with possessing with the intent to distribute crack cocaine. Westerfield was acquitted on the remaining five counts, including Count 31, which charged him with possessing with the intent to distribute powder cocaine.

At sentencing, over Westerfield's objections, the district court found that defendant was a career offender as defined in U.S.S.G. § 4B1.1. The court then sentenced Westerfield to a term of 360 months of imprisonment, to run concurrently with his sentence resulting from his felon-in-possession conviction. This timely appeal followed.

II.

*Case Number 07-3376*

A.

In his first assignment of error, Westerfield argues that the district court should have granted a mistrial when it received notice that potential jurors had viewed some of the defendants in handcuffs outside of the courtroom, in the hallway. We review the denial of a motion for a mistrial for an abuse of discretion. *United States v. Martinez*, 430 F.3d 317, 336 (6th Cir. 2005). However, because Westerfield did not move for a mistrial at trial or otherwise object to the use of handcuffs to transport him to the courthouse, we review Westerfield's claim for plain error. *United States v.*

*Christman*, 509 F.3d 299, 307 n.3 (6th Cir. 2007). Under a plain error analysis, Westerfield must show "(1) error (2) that was obvious or clear (3) that affected his substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Phillips*, 516 F.3d 479, 487 (6th Cir. 2008) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)). We find that no plain error occurred here.

Westerfield's claim is based on an incident that occurred during voir dire, in which the presiding judge was handed a note "stating that apparently some of the defendants were complaining [that] some of the jurors were outside the courtroom when they were brought into the courtroom in handcuffs." The district court responded that it had not learned of such incidents happening and stated that the courtroom staff and Marshal's Service were "working diligently to make certain that there's no such occurrences." The court did not offer any type of curative instruction to the jury pool, and Westerfield's attorney raised no objections or requests for such an instruction. Westerfield argues that this incident was prejudicial and warrants reversal of his conviction.

Defendant's argument is unpersuasive. The cases upon which he relies are inapplicable because they involve the decisions by a trial court to shackle a defendant during trial. There is no evidence here that Westerfield was shackled or otherwise restrained while in the courtroom, or that potential jurors saw defendant enter the courtroom while wearing shackles. This distinction is significant, as we have "distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse." *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991) (citing *United States*

*v. Crane*, 499 F.2d 1385, 1389 (6th Cir. 1974)).  In such situations, a defendant on appeal is "required to show actual prejudice where 'the conditions under which [he was] seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial.'" *Id.* (quoting *Payne v. Smith*, 667 F.2d 541, 544-45 (6th Cir. 1981)).

In similar circumstances, we have repeatedly denied requests for mistrial where the defendant is unable to carry his burden of showing actual prejudice.  *United States v. Waldon*, 206 F.3d 597, 607-08 (6th Cir. 2000) (rejecting claim on appeal where "one juror . . . saw Waldon in shackles, and that juror mentioned it contemporaneously to only one other juror" because  the "event occurred outside of the courtroom as part of a routine security measure, the district court properly queried both jurors regarding any potential prejudice to Waldon, and the two jurors assured the district court that their view of Waldon in handcuffs and shackles made no difference whatsoever in their decision"); *Moreno*, 933 F.2d at 368 (denying claim on appeal where "defendants were inadvertently observed in shackles while being transported by the marshals and the jury learned of defendants' custodial status through trial testimony" because the record failed "to support defendants' claims of inherent prejudice warranting mistrial").  *See also United States v. Bowlson*, 148 F. App'x 449, 455-56 (6th Cir. 2005) (rejecting claim where defendant failed to request a mistrial, and explaining that defendants' "complaint that jurors may have seen him briefly as he was transported to and from the courtroom is not a sufficient basis to justify setting aside his conviction.").

Although there was no curative instruction here as in *Waldon*, Westerfield has failed to carry his burden of showing actual prejudice.  First, because the incident occurred during voir dire and

outside of the courtroom, the record is unclear regarding how many – if any – of the eventual jurors

viewed Westerfield in handcuffs. Second, and similarly, there is no indication in the record that

Westerfield was one of the defendants who was seen in handcuffs by the potential jurors. Finally,

other than relying on inapplicable caselaw for the proposition that it is "inherently prejudicial" for

the jury to see a shackled defendant, Westerfield has not relied on any evidence in the record to show

that he was prejudiced by this incident.

Accordingly, we hold that the district court did not commit plain error in failing to order a

mistrial.

B.

Westerfield next argues that the district court should have granted his motion for a new trial

based upon the government's alleged failure to establish a chain of custody for the crack cocaine.

We review the denial of a motion for a new trial for abuse of discretion. *Radvansky v. City of*

*Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007); *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 367 (6th

Cir. 2006). This standard is highly deferential, and we will find an abuse of discretion only when

we have a "definite and firm conviction that the trial court committed a clear error of judgment."

*Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006) (internal quotation omitted).

The district court summarized the pertinent facts as follows:

> On April 25, 2005, police seized a box containing powder and crack cocaine from the
> home of Jacquoia Ginn. During the search, Det. Chuck Metcalf served as the
> inventory officer. In his inventory report, Det. Metcalf listed the crack cocaine but
> not the powder cocaine. Following the search, Det. Metcalf took the drugs to the
> crime lab at the Sheriff's Department and prepared a chain of custody document. On

November 9, 2005, Defendant was charged with, *inter alia*, intentionally possessing crack and powder cocaine.

At trial, the government introduced the drugs and the chain of custody document. The document contained two entries – the first indicating that Det. Metcalf had submitted the seized items to the Sheriff's Department Laboratory and the second showing that Special Agent Lee Lucas of the Drug Enforcement Agency had removed the items to bring them to trial. Det. Metcalf could not explain the chain of custody within the laboratory, but did testify that the drugs remained sealed before and after they were tested. Det. Metcalf also testified that the crack and powder cocaine introduced at Defendant's trial was the same seized on April 25, 2005.

The district court, citing our opinion in *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997), denied defendant's motion on the basis that "challenges to the chain of custody go to [the] weight of evidence, not admissibility," reasoning that "[a]t most, Defendant has '[m]erely rais[ed] the possibility of tampering,' which 'is insufficient to render evidence inadmissible.'"

The district court's ruling was correct. We have explained repeatedly that "[a]bsent clear evidence that public officers tampered with the evidence at issue, challenges to the chain of custody typically go to the weight of the evidence, and not its admissibility." *United States v. Collier*, 246 F. App'x 321, 335 (6th Cir. 2007) (citing *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990) and *Allen*, 106 F.3d at 700); *United States v. Combs*, 369 F.3d 925, 938 (6th Cir. 2004) ("Merely raising the possibility of tampering or misidentification is insufficient to render evidence inadmissible.") (quoting *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir. 1994)). *See also United States v. Black*, 239 F. App'x 210, 214 (6th Cir. 2007) ("Where no evidence exists to indicate that tampering with an exhibit occurred, the court presumes public officers have properly discharged their

duties.") (citing *Allen*, 106 F.3d at 700); *United States v. Butler*, 137 F. App'x 813, 819 n.3 (6th Cir.

2005) ("Gaps in the chain of custody, however, go to the weight, not the admissibility of evidence").

On appeal, Westerfield has not cited any evidence in the record indicating that the cocaine

was actually tampered with. On the contrary, he admits that "there is no affirmative evidence of

tampering in the sense of switching the seized drugs or changing the amount of the drugs found

. . . ." Under *Allen, Levy,* and *Combs*, this argument plainly fails. *See also United States v. Williams*,

503 F.2d 50, 53 (6th Cir. 1974) (rejecting challenge to admission of drugs into evidence where

defendant argued that the "lack of any testimony regarding the transfer of the bags from the

technician to the government chemist [was] a fatal missing link" in the chain of evidence, reasoning

that "the envelopes containing the narcotics were initialed and lock-sealed by an agent of the Bureau

of Narcotics and Dangerous Drugs and that the envelopes were lock-sealed and untorn when

received by the chemist. Since the seals were unbroken when the chemist received the envelopes,

we find that the evidence was properly admitted."). Without any evidence indicating that the crack

cocaine was tampered with, Westerfield's argument goes to the weight of the evidence rather than

its admissibility. Therefore, we conclude that the district court did not abuse its discretion in denying

defendant's motion for a new trial.

C.

In his final argument raised in appeal number 07-3376, Westerfield contends that the district

court erred in sentencing him as a career offender pursuant to U.S.S.G. § 4B1.1. Specifically, he

argues that the district court misapplied the categorical approach required by the Supreme Court when determining a defendant's eligibility for career offender status. We disagree.

We review de novo questions involving the interpretation of the Sentencing Guidelines, including the district court's determination that defendant is a career offender under U.S.S.G. § 4B1.1. *Mallett v. United States*, 334 F.3d 491, 500 (6th Cir. 2003); *United States v. Dolt*, 27 F.3d 235, 237 (6th Cir. 1994). Moreover, we may "affirm a district court's judgment for reasons other than those stated by the lower court." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

To qualify as a career offender under U.S.S.G. § 4B1.1, a defendant who was over the age of eighteen at the time he committed the instant felony offense must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(1), (3). The term "crime of violence" is defined as any felony that either "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

Before sentencing, the Presentence Investigation Report ("PSR") recommended that Westerfield qualified for career offender status, based on his 1997 felony convictions for (1) extortion/abduction, and (2) aggravated drug trafficking, thus resulting in a Guidelines range of 360 months to life imprisonment. At the sentencing hearing, Westerfield conceded that the aggravated trafficking conviction was a predicate crime of violence, but contested the applicability of his extortion/abduction convictions. He argued further that the extortion and abduction statutes

encompass both violent and nonviolent activity, thereby allowing the court to look beyond the face of the statute to determine whether the convictions were predicate offenses. The government disagreed with Westerfield's claim that the abduction and extortion convictions were not predicate offenses and argued that Westerfield's 2003 conviction for escape was also a predicate offense.

The district court agreed with the government, explaining that under the "categorical approach, based upon the Guidelines as well as the application notes to the same, it would appear to the court that indeed the extortion conviction clearly is a crime of violence, indeed in all likelihood the abduction is as well." The court then stated that even if it were to look beyond the statutory definition of extortion, as Westerfield requested, its conclusion remained the same:

> However, in an abundance of caution, even if the court were to consider the defendant's arguments and to look to the terms of the charging document, in terms of the plea agreement, the transcript of colloquy, et cetera, as it relates to the abduction and the extortion conviction, the court is convinced that even using that approach, indeed these two offenses would be crimes of violence for the following reasons.
>
> The indictment itself . . . clearly references language that would give rise to the use of force, threat, restrain[t] of liberty of the victim in this case, Miss Constance Hunter.
>
> * * *
>
> The factual predicate set forth in Defendant's Exhibit A, reveals the fact that the victim in this case – I'll read it so it's clear for the record – it says between 2/1/97 and 3/6/97, Jason Westerfield moved in the residence at 497 and a half West Fourth Street, and took the residence over from Constance Hunter, who is blind, and rented the apartment.
>
> The defendant, paragraph 2, took all the victim's belongings and put them in garbage bags and placed them in a bedroom where the victim was banished to live.

Three, the defendant refused to leave the residence and suggested the victim find another place to live.

The defendant was unknown by the victim.

Five, the defendant had her telephone service changed to a different address, at which the defendant obtained the victim's new address, picked her up took her to the phone company, and had her reconnect the old line.

And then paragraph 6, finally on 3/6/97 the victim contacted the Mansfield Police Department and investigation started.

It's clear to the court, the victim, obviously blind and obviously unable to defend herself, clearly there was an element of force or threat of force that was part and parcel of this underlying offense of extortion and abduction.

The court then addressed the government's second argument, concluding that Westerfield's prior escape conviction also qualified as a predicate offense.

On appeal, Westerfield argues that the district court misapplied the categorical approach required by the Supreme Court when determining a defendant's eligibility for career offender status. Under the categorical approach, adopted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 600 (1990), a sentencing court may look "only to the statutory definitions of the prior offenses, . . . and not to the particular facts underlying those convictions" in determining whether a prior conviction qualifies as a predicate offense for a sentence enhancement. *See also United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006) (applying categorical approach to career offender status under § 4B1.1). Where the statutory definition of the prior crime encompasses both violent and nonviolent behavior, however, the sentencing court may then look to the "charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual

basis for the plea was confirmed by the defendant, or to some comparable record of this information"

to determine whether the crime involved the violent aspect of the statute. *Shepard v. United States*,

544 U.S. 13, 26 (2005). *See also United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006)

(describing a sentencing court's two-step application of categorical approach under *Taylor* and

*Shepard*).

Specifically, Westerfield disputes the district court's holding that his 1997 conviction for

abduction was a conviction for a crime of violence. He argues that the Ohio abduction statute

encompasses both violent and nonviolent behavior and that the district court misapplied *Taylor* and

*Shepard* by "assum[ing] that if any conviction of [abduction] fit within the scope of § 4B1.2 then

all convictions of [abduction] fit within the statute." The Ohio abduction statute provides:

> (A) No person, without privilege to do so, shall knowingly do any of the following:
>
> (1) By force or threat, remove another from the place where the other person is found;
>
> (2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear;
>
> (3) Hold another in a condition of involuntary servitude.

OHIO REV. CODE § 2905.02. Although he concedes that subsections (1) and (2) involve violent

conduct, Westerfield contends that subsection (3) may be violated in a nonviolent manner and

therefore the sentencing court was entitled to look beyond the statutory definition of "abduction" and

consider *Shepard* materials. We disagree.

Although one can conceive of nonviolent methods by which a defendant can "[h]old another

in a condition of involuntary servitude," the statute clearly targets conduct that "presents a serious

risk of physical injury to another." In *James v. United States*, 127 S. Ct. 1586 (2007), the Supreme

Court rejected the defendant's argument that attempted burglary was not a predicate offense under

the ACCA because not all cases of attempted burglary necessarily present a risk of physical injury:

> James' argument also misapprehends *Taylor*'s categorical approach. We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. *Cf. Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime").
>
> Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury – for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets, *see United States v. Thomas*, 361 F.3d 653, 659 (D.C. Cir. 2004). Or, to take an example from the offenses specifically enumerated in § 924(e)(2)(B)(ii), one could imagine an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments. In both cases, the risk of physical injury to another approaches zero. But that does not mean that the offenses of attempted murder or extortion are categorically nonviolent.
>
> As long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision. Attempted burglary under Florida law – as construed in *Jones* to require an overt act directed toward entry of a structure – satisfies this test.

*James*, 127 S. Ct. at 1597-98.[1]  Here, although a defendant could conceivably use nonviolent methods to hold another in involuntary servitude – by, for example, using blackmail to coerce a victim into servitude – abduction is undoubtedly an offense of a type that "by its nature, presents a serious potential risk of injury to another," such that it is a crime of violence.

Our conclusion is further supported by the Court's recent decision in *Begay v. United States*, 128 S. Ct. 1581 (2008).  In considering whether driving under the influence of alcohol is a "violent felony" under the ACCA, the Court explained that the inclusion of examples in the statute's residual clause – burglary, arson, extortion, or crimes involving the use of explosives – "indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 1585.  *See also United States v. Bartee*, — F.3d —, No. 07-1522 (6th Cir. June 10, 2008) (summarizing *Begay* and holding that like the ACCA, "§ 4B1.2(a)(2) also should be limited to crimes that are similar in both kind and in degree of risk to the enumerated examples").  The Court reasoned that the crime of DUI differed from those listed in the residual clause in that the enumerated crimes "all typically involve purposeful, 'violent,' and 'aggressive' conduct" whereas "statutes that forbid driving under the influence . . . impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all."

---

[1]Although *James* involved the interpretation of the ACCA, rather than U.S.S.G. § 4B1.1's career offender designation, the Court's opinion in *James* is nevertheless applicable to Westerfield's appeal.  *See Lancaster*, 501 F.3d at 676 n.2; *United States v. Flores*, 477 F.3d 431, 437 n.3 (6th Cir. 2007).

*Begay*, 127 S. Ct. at 1586-87. Consequently, the Court held that ACCA's residual clause did not include the crime of DUI in its definition of a violent felony. *Id.* at 1588.

The Court's emphasis in *Begay* on the enumerated examples of violent felonies in 18 U.S.C. § 924(e)(2)(B)(ii) reinforces our view that Westerfield's conviction for abduction was a conviction for a predicate offense under U.S.S.G. § 4B1.1. Like the crimes of burglary, arson, and extortion, abduction involves purposeful and aggressive conduct such that a defendant who has engaged in abduction has exhibited a "degree of callousness toward risk" that shows "an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger." *Id.* at 1587 (stating that "[w]e have no reason to believe that Congress intended a 15-year mandatory prison term where that increased likelihood does not exist"). Moreover, we find that Westerfield's conviction for abduction is similar to the crime of extortion, in that both may often involve the threat of physical force against another for pecuniary gain. Reinforcing our conclusion is the fact that Westerfield was also tried and convicted of extortion, under OHIO REV. CODE § 2905.11, for the same conduct that served as the basis for his abduction conviction. Thus, contrary to Westerfield's position at oral argument, the Court's opinion in *Begay* supports the district court's sentencing determination.

Accordingly, we hold that Westerfield's abduction conviction is a crime of violence under § 4B1.1, and the district court properly sentenced Westerfield as a career offender.[2]

---

[2]We note that Westerfield concedes in his reply brief that the eligibility of his prior escape conviction for a sentence enhancement under § 4B1.1 is controlled by this court's precedent in *United States v. Lancaster*, 501 F.3d 673 (6th Cir. 2007). In *Lancaster*, we held that, using the

III.

*Case Number 07-3438*

In case number 07-3438, Westerfield argues that the district court improperly sentenced him

as an armed career criminal under the ACCA.  For purposes of this separate appeal, he concedes that

his 1997 conviction for abduction, and his 1995 conviction for breaking and entering, are predicate

---

categorical approach and looking solely to the statutory definition, "a Kentucky state conviction for second-degree escape is a 'violent felony' for purposes of the . . . 'ACCA' [], 18 U.S.C. § 924(e)." *Id.* at 675.  Rejecting the defendant's argument that second-degree escape was not a violent felony because Kentucky's statute applied to "walk away escapes," this court reasoned that "an escaped prisoner poses a 'continuing threat to society'" and that the "consequences and circumstances of a Kentucky prisoner's escape from custody . . . involve 'conduct that presents a serious potential risk of physical injury to another.'" *Id.* at 680-81.  In so doing, we distinguished *United States v. Collier*, 493 F.3d 731 (6th Cir. 2007), which held that a defendant's conviction under Michigan's prison escape statute was not a violent felony due, in part, to the Michigan statute's definition of escape as a discrete act, complete when the prisoner first leaves state custody.  As we pointed out in *Lancaster*, the Michigan definition of escape is the minority approach; both the majority of states and the federal escape statute define escape as a continuing offense.  *Lancaster*, 501 F.3d at 680.

Westerfield's concession that *Lancaster* controls his escape conviction is correct, as *Lancaster* appears to apply to all escape statutes not specifically defined or interpreted as a discrete, non-continuing offense.  Because there is no indication that escape is so defined under Ohio's statute, Westerfield's 2003 escape is a predicate offense under § 4B1.1, and we agree that he was properly sentenced as a career offender subject to § 4B1.1's sentence enhancement.

Nevertheless, the Supreme Court has recently granted certiorari to consider whether a conviction for escape under a statute that encompasses walkaway escapes qualifies as a violent felony under the ACCA.  *United States v. Chambers*, 473 F.3d 724 (7th Cir. 2007), *cert. granted*, No. 06-11206, 128 S. Ct. 2046 (Apr. 21, 2008).  Thus, because Westerfield has other prior convictions that may serve as predicate offenses under § 4B1.1, we need not, and do not, rely on Westerfield's 2003 escape conviction to affirm the district court's sentencing determination in case number 07-3376.

violent felony offenses, but contends that the district court erred in holding that his 1997 conviction

for attempted retaliation was a conviction for a violent felony.[3]

> The ACCA provides, in pertinent part:
>
> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). The Ohio retaliation statute, under which defendant was convicted, provides:

> No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

OHIO REV. CODE § 2921.05(A).

The district court found, and both parties agree on appeal, that the statute encompasses both

violent and nonviolent behavior. Accordingly, the court looked to *Shepard* materials to determine

whether Westerfield's conviction was a conviction for a violent felony. Specifically, the court relied

on the Judgment Entry of Conviction and Sentence completed by the Ohio state sentencing judge,

---

[3]Although Westerfield conceded before the district court in case number 07-3376 that his 1997 conviction for Aggravated Trafficking was a conviction for a crime of violence under § 4B1.1, the government did not rely on this conviction in case number 07-3438 to support its position that Westerfield is subject to the ACCA. Because the government has not asserted, either before the district court or this court, that Westerfield's conviction for Aggravated Trafficking is a predicate offense under the ACCA, we choose not to rule whether this conviction also supports the district court's determination that Westerfield was subject to an enhanced sentence under the ACCA.

who found that the following factors were part of Westerfield's crime: "attempt or threat"; "attempt or threat of harm, and previous conviction for physical harm"; "previous prison term served"; and "defendant already under community control or violated prior community control." The district court reasoned that these factors correlated to findings under OHIO REV. CODE § 2929.13 that Westerfield's actions involved the threat of physical harm to a person.

We conclude that the court erred in relying on the Judgment Entry of Conviction and Sentence to determine the nature of Westerfield's crime. In *Shepard*, the Supreme Court limited a sentencing court to consideration of only "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. The Court noted the limitation that the Sixth Amendment places on a sentencing court's review of the nature of a defendant's prior convictions, and emphasized the requirement that the documents relied upon by the sentencing court reflect the defendant's admission to violent behavior:

> The Government dismisses the relevance of the *Jones-Apprendi* implementation of the jury right here by describing the determination necessary to apply the ACCA as "involv[ing] only an assessment of what the state court itself already has been 'required to find' in order to find the defendant guilty." But it is not that simple. The problem is that "what the state court . . . has been 'required to find'" is debatable. In a nongeneric State, the fact necessary to show a generic crime is not established by the record of conviction as it would be in a generic State when a judicial finding of a disputed prior conviction is made on the authority of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). The state statute requires no finding of generic burglary, and without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies in jury instructions, or bench-trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted findings

of fact confirming the factual basis for a valid plea. In this particular pleaded case, the record is silent on the generic element, there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact.

Instead, the sentencing judge considering the ACCA enhancement would (on the Government's view) make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea, and the dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute.

*Shepard*, 544 U.S. at 24-25 (internal citation omitted). *See also United States v. Calloway*, 189 F. App'x 486, 490-91 (6th Cir. 2006) (holding that district court erred in relying on presentence report to determine nature of prior convictions, where there was no "indication [that the facts presented in the presentence report] were admitted by Calloway").

Here, there is no indication in the record that Westerfield admitted to the facts found in the Judgment Entry of Conviction and Sentence. Indeed, the document provides specifically that the facts relied upon by the government were found by the court. Without Westerfield's admission to these judge-found facts, the judgment was not a permissible document upon which to rely under *Shepard* and cannot support the court's holding that Westerfield's conviction for attempted retaliation was a conviction for a violent felony as defined in the ACCA. Because OHIO REV. CODE § 2921.05(A) encompasses both violent and nonviolent behavior and the government has not offered any permissible materials that demonstrate that defendant's conviction necessarily involved the

violent behavior prohibited in § 2921.05(A), we conclude that the court erred in relying on Westerfield's attempted retaliation conviction in sentencing defendant as an armed career criminal.

Nonetheless, as discussed above, Westerfield's escape conviction was a predicate offense under the ACCA pursuant to our opinion in *Lancaster*. *See supra*, footnote 2. *See also Apple*, 183 F.3d at 479 (observing that we may "affirm a district court's judgment for reasons other than those stated by the lower court"). Moreover, although we have not had the benefit of the parties' briefings on this issue, we are not persuaded that the Court's opinion in *Begay* affects our prior holding in *Lancaster*. The crime of escape is substantially similar to the crime of burglary in that both pose a significant risk of danger in the possibility of a confrontation with police. *See James*, 127 S. Ct. at 1592 (observing that the "most relevant common attribute" of the enumerated offenses in 18 U.S.C. § 924(e)(2)(B)(ii) is that all of the offenses "create significant risks of bodily injury or confrontation that might result in bodily injury"); *id*. at 1594-95 (noting that the "main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third-party"). Furthermore, escape – like burglary, arson, extortion, and crimes involving the use of explosives – involves "purposeful, 'violent' and 'aggressive' conduct," *Begay*, 128 S. Ct. at 1586, that is the common denominator among the enumerated offenses in § 924(e)(2)(B)(ii).

Accordingly, we hold that the court did not err in sentencing Westerfield to a term of 180 months of imprisonment due to his armed career criminal status.

IV.

For these reasons, Westerfield's convictions and sentences are affirmed.